**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VERNON MADISON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:09-00009-KD-B** |
| | ) | |
| **RICHARD ALLEN,** | ) | |
|     **Commissioner of the Alabama** | ) | |
|     **Department of Corrections, and the** | ) | |
|     **ATTORNEY GENERAL OF THE** | ) | |
|     **STATE OF ALABAMA** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## ORDER

Before the Court are Petitioner Vernon Madison's Petition for Writ of Habeas Corpus (Doc. 1-2) and "Amendment to Petitioner's Habeas Corpus Petition" (Doc. 30), along with Respondents' answers to same (Docs. 19, 38), as well as Madison's Motion for Discovery and Evidentiary Hearing (Doc. 31). On January 8, 2009, Madison initiated this action by filing a Petition for Writ of Habeas Corpus. (Doc. 1). Madison challenges a 1994 Alabama state court judgment of conviction and death sentence for a single count of capital murder.

For the reasons set forth below, Madison's claims are **DENIED** and his requests for discovery and for an evidentiary hearing[1] are **DENIED**.

---

[1] Because Madison filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1337 (11th Cir. 2004). The legal standard for determining when an evidentiary hearing in a habeas corpus case is allowed is articulated in 28 U.S.C. § 2254(e)(2), which provides:

(Continued)

## I. Procedural Posture

In May of 1985, a Mobile County grand jury indicted Madison for the murder of Julius Schulte. (Tab R-1 at 26; Indictment). Schulte was an officer in the Mobile Police Department's Juvenile Division. (Id.) The two-count indictment charged capital murder under § 13A-5-40(a)(5) of the Alabama Code. (Id.). The first count of the indictment "charged the appellant with killing a police officer who was on duty, and the second charged him with killing a police officer who was performing an official or job-related act." (Tab R-49; Madison v. State, 718 So. 2d 90 (Ala. Crim. App. 1997)); (Tab R-1 at 26; Indictment). Madison pled not guilty and not guilty by reason of mental disease or defect. See Madison v. State, 620 So. 2d 62, 63 (Ala. Crim. App. 1992).

---

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

**(A)** the claim relies on—

**(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

**(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and

**(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Id.

Madison has failed to establish that an evidentiary hearing is warranted in this case.

Madison was tried three times for the murder of Officer Schulte. On September 12, 1985, at the conclusion of his first trial, a jury found Madison guilty of capital murder. See id. The trial court then sentenced Madison to death. See id. Madison appealed, and the Alabama Court of Criminal Appeals determined that the prosecution had violated Batson v. Kentucky, 476 U.S. 79 (1986), reversed Madison's conviction and sentence, and remanded his case for a new trial. Madison v. State, 545 So. 2d 94, 99 (Ala. Crim. App. 1987) (finding that prosecutor's explanations for use of peremptory strikes to remove all seven black prospective jurors from venire were "superficial, show[ed] a lack of proper examination" and did not overcome the defendant's prima facie case). Following his second trial in September of 1990, Madison was again convicted and sentenced to death. Madison, 620 So. 2d at 63. Madison's second conviction and death sentence were also reversed and the case again remanded for a new trial, this time due to a violation of Ex parte Wesley, 575 So. 2d 127 (Ala. 1990). See Madison, 620 So. 2d at 71 (reversing because prosecution psychologist Dr. McClaren was permitted, during the guilt phase of trial, to state his opinion of the appellant's mental condition at the time the offense was committed, despite the fact that McClaren's opinion was based in part on information not in evidence).

Madison's third trial commenced on April 18, 1994. (Tab R-5 at 1; Tr. Transcript, Vol. 2, p. R-25). Three days later, on April 21, 1994, Madison was again convicted of capital murder. (Tab R-16 at 1-2; Tr. Transcript, Vol. 5, pp. R-704-705). The penalty phase of the trial was then conducted before the jury (Tab R-17 at 1; Tr. Transcript, Vol. 5, p. R-706), which, by a vote of 8 to 4, recommended a sentence of life imprisonment without parole. (Tab R-26 at 1; Tr. Transcript, Vol. 5, p. R-800). However, at the sentencing hearing on July 7, 1994, the trial court overrode the jury's recommendation and sentenced Madison to death. (Tab R-29 at 1; Tr.

Transcript, Vol. 6, p. 25). On direct appeal, the Alabama Court of Criminal Appeals affirmed Madison's capital murder conviction and death sentence. (Tab R-49; <u>Madison</u>, 718 So. 2d 90).

On certiorari review of Madison's direct appeal following his third trial, the Alabama Supreme Court specifically addressed whether the trial court deprived Madison of his constitutional rights by not requiring the jury to reach a unanimous agreement on which of two alternative theories supported the capital conviction. (Tab R-50; <u>*Ex parte* Madison</u>, 718 So. 2d 104, 106 (Ala. 1998)). The Alabama Supreme Court affirmed Madison's conviction and sentence on June 19, 1998. <u>Id.</u> at 105-108 (interpreting § 13A-5-40(a)(5) as stating two alternative theories of proving a single offense and concluding "that the requirement for unanimous verdicts does not extend to unanimous agreement on the theory or means by which a defendant committed the crime"). Madison then petitioned the United States Supreme Court for a writ of certiorari, which the high court denied on November 16, 1998. (Tab R-51; <u>Madison v. Alabama</u>, 525 U.S. 1006 (1998)).

Madison timely initiated a collateral attack on his conviction and death sentence by filing a petition for postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on June 18, 1999. (Tab R-37; Petition Pursuant to Rule 32 of the Alabama Rules of Criminal Procedure). The State of Alabama responded on July 14, 1999, filing an answer (Tab R-38; Answer) and a motion to dismiss (Tab R-40; Motion for Dismissal). However, the circuit court did not dispose of Madison's Rule 32 motion until August 2005, after the State renewed and revised its 1999 motion to dismiss. On August 25, 2005, the circuit court granted the

renewed and revised motion to dismiss, summarily dismissing Madison's petition. (Tab R-52; Order Addressing Madison's Rule 32 Petition).[2]

Madison appealed the dismissal of his Rule 32 petition, and on September 29, 2006, the Alabama Court of Criminal Appeals affirmed the lower court's dismissal. (Tab R-53; Madison v. State, 999 So. 2d 561 (Ala. Crim. App. 2006)). On December 1, 2006, the Court of Criminal Appeals denied Madison's request for a rehearing. Id. Finally, Madison sought certiorari review in Alabama's Supreme Court, which was denied on August 15, 2008. (Tab R-54; Certificate of Judgment Denying Writ).

On December 2, 2008, Madison timely filed the instant petition pursuant to § 2254 of Title 28 of the United States Code. (Doc. 1). Respondent filed his answer to the petition on April 29, 2009. (Doc. 19). On January 20, 2010, Madison filed an amendment to his § 2254 petition. (Doc. 30). Respondent answered the amendment on April 27, 2010. (Doc. 38).

## II. Factual Background

In its opinion affirming Madison's capital murder conviction and death sentence, the Alabama Supreme Court summarized the underlying facts of this case as follows:

> The evidence presented at Madison's third trial showed that on April 18, 1985, Cpl. Julius Shulte, an officer of the Mobile Police Department, was dispatched to Cheryl Green's home to investigate a report that Green's 11-year-old daughter was missing. Corporal Shulte was not in his police uniform and was not in a marked car. He was, however, wearing a Mobile Police Department badge. Madison, who until a few days earlier had been living with Green, came to Green's home, before Cpl. Shulte arrived, to retrieve personal items that Green had thrown out of the house. By the time Cpl. Shulte arrived at Green's home, Green's daughter had already

---

[2]    A full history of the Rule 32 proceedings in the Mobile County Circuit Court was set forth by the Alabama Court of Criminal Appeals in Madison v. State, 999 So. 2d 561, 565-66 (Ala. Crim. App. 2006).

returned. Nonetheless, neighbors asked Cpl. Shulte to stay until Madison had left Green and her child safely alone.

Green and Madison came out of the house and talked to Cpl. Shulte, who never got out of his car. After a brief conversation with Cpl. Shulte, Madison appeared to leave. Actually, he walked about a block away and returned with a .32 caliber pistol; he covertly walked up behind Cpl. Shulte, while Cpl. Shulte was still in his car. Madison fired two shots at near point-blank range, one into the back of Cpl. Shulte's head and one into his left temple. Madison then shot Green twice in the back and fled the murder scene. He subsequently told an acquaintance, "I just killed a cop."

(Tab R-50; *Ex parte* Madison, 718 So. 2d at 105).

## III. Discussion

As outlined above, Madison has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254"), setting forth 34 claims in support of his request for habeas relief. For clarity, the Court has numbered Madison's habeas claims 1-34, in the order in which they have been asserted in Madison's pleadings, as follows:

**Claim 1**: The state circuit court should not have summarily dismissed Madison's Rule 32 petition. (Doc. 1-2, ¶ III.A).

**Claims 2-16**: Madison's trial counsel was ineffective. (Doc. 1-2, ¶ III.B (pp. 7-12 of the petition contain 15 separate ineffective assistance of trial counsel claims); Doc. 30, ¶ B.1.a-c).

**Claim 17**: Madison's <u>Brady</u> claim should not have been dismissed. (Doc. 1-2, ¶ III.C.).

**Claim 18**: The State of Alabama discriminated in the selection of the grand jury. (Doc. 1-2, ¶ III.D.).

**Claim 19**: The trial court had a *sua sponte* duty to recuse itself from deciding the case. (Doc. 1-2, ¶ III.E; Doc. 30, ¶ D.1.).

**Claim 20**: Madison's death sentence was imposed due to racial bias. (Doc. 1-2, ¶ III.F).

**Claim 21**: Madison's sentence of death by electrocution is cruel and unusual. In spite of an intervening Alabama law mandating execution by lethal injection unless an inmate chooses electrocution, the fact that Madison was sentenced to death by electrocution entitles him either to a resentencing or to a determination of the constitutionality of this method of execution. (Doc. 1-2, ¶ III.G).

**Claim 22**: Alabama does not provide Madison a meaningful procedure to seek clemency in violation of the International Covenant on Civil and Political Rights. (Doc. 1-2, ¶ III.H).

**Claim 23**: The trial court erred in using an element of the capital-murder offense as an aggravating circumstance in imposing a death sentence. (Doc. 1-2, ¶ III.I).

**Claim 24**: Madison's appellate counsel was ineffective. (Doc. 1-2, ¶ III.I.42, J; Doc. 30, ¶ B.2).

**Claim 25**: The trial court erred in denying Madison's motion for a change of venue. (Doc. 1-2, ¶ III.K).

**Claim 26**: The trial court erred in allowing Madison's indictment to charge two counts of capital murder for a single offense. (Doc. 1-2, ¶ III.L).

**Claim 27**: The trial court erred by finding no mitigating circumstances when imposing its sentence. (Doc. 1-2, ¶ III.M; Doc. 30, ¶ D.3).

**Claim 28**: The trial court erred when it refused to instruct the jury on manslaughter as a lesser included offense. (Doc. 1-2, ¶ III.N; Doc. 30, ¶ D.2).

**Claim 29**: The trial court erred by denying Madison's <u>Batson</u> motion and not requiring the state to articulate its reasons for striking black jurors. (Doc. 1-2, ¶ III.O).

**Claim 30**: The trial court erred by overriding the jury's recommendation of life imprisonment without parole and imposing the death penalty. (Doc. 1-2, ¶ III.P; Doc. 30 ¶¶ 4 & 6).

**Claim 31**: The trial court improperly denied Madison adequate voir dire concerning a potential juror's views on the death penalty. (Doc. 1-2, ¶ III.Q).

**Claim 32**: The trial court erred in admitting a replica of the badge Officer Schulte allegedly wore the night he was killed. (Doc. 1-2, ¶ III.R; Doc. 30, ¶ C.2).

**Claim 33**: Madison's trial counsel was ineffective for not raising certain issues at trial, resulting in those issues being procedurally barred in further appellate proceedings. (Doc. 30, ¶ B.1.d).

**Claim 34**: The trial court erred in allowing the sitting District Attorney of Mobile County to testify as a witness for the prosecution as to the voluntariness of Madison's statements. (Doc. 30, ¶ C.1).

As explained in greater detail below, Madison has procedurally defaulted twenty-five of these claims. The undersigned considers the remaining nine claims on the merits.

## A. Procedurally Defaulted Claims

Before a federal court considers a habeas petition presented by a state prisoner, the court must first determine whether the petitioner has properly presented the issues to the state courts. A state prisoner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also 28 U.S.C. § 2254(b)(1) (a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State."). The exhaustion doctrine requires that a petitioner "give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court. See Ala. R. App. P. 4, 39-40.

A state prisoner's failure to present his claims to the state courts in the proper manner results in a procedural default of those claims. O'Sullivan, 526 U.S. at 848. The doctrine of procedural default, as it relates to petitions filed under 28 U.S.C. § 2254, arises from principles of comity and federalism. Francis v. Henderson, 425 U.S. 536, 541 (1976). A federal court "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." Harris v. Reed, 489 U.S. 255, 260 (1989). A violation of a state procedural rule is adequate to foreclose federal review if the rule is "firmly established and regularly followed." Lee v. Kemna, 534 U.S. 362, 376 (2002). A state court's decision is independent unless the resolution of the state law issue depends on a federal constitutional ruling. Stewart v. Smith, 536 U.S. 856, 860 (2002).

Procedural default can arise in two ways. First, procedural default can occur when a petitioner raises his federal claims in state court, and "the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred." Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). Second, procedural default can occur when a petitioner fails to raise his federal claims in state court, rendering the claims unexhausted, and the time to do so has lapsed. Id. See also O'Sullivan, 526 U.S. at 843-45. Although unexhausted claims generally must be returned to the state court for

consideration on the merits, if the federal court determines that the state procedural rules now preclude review of the claim on the merits and, thus, exhaustion would be futile, the doctrine of procedural default applies even though the state court never invoked the state procedural rule. Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998).

Once a federal claim is procedurally defaulted in state court, a state habeas petitioner "is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." Bailey, 172 F.3d at 1302 (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" or that the procedural default was the result of ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986). Prejudice, in this context, means a reasonable probability that the outcome would have been different. Jenkins v. Bullard, 210 Fed. Appx. 895, 898-901 (11th Cir. 2006) (per curiam). A petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). In the absence of a showing of cause and prejudice, the Court may yet consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38 (1986). Absent one of these exceptions, however, procedurally defaulted claims cannot be raised in federal habeas corpus petitions. Kelley, 377 F.3d at 1343-45 (11th Cir. 2004).

The Court will now consider those claims alleged by Respondents to be procedurally defaulted.

## 1. Claims Not Raised in the State Court – Claims 21 and 34

With regard to Claim 21, Madison contends in his § 2254 Petition that "[t]he Alabama court decision that the new 'choice' provided Mr. Madison in the method of his execution somehow relieves the problem of the method/methods being cruel or unusual is, with all due respect, a puzzling bit of reasoning." (Doc. 1-2, ¶ III.G).  Specifically, he argues

> [ ]  Were one to offer a robber the "option" of blinding himself with a hot poker or removing his hands via a sharp axe as his form of punishment, the absurdity of this problem might be more apparent.

> [ ] Despite the new "protocol" offered by the State, in its infinite kindness, the fact remains no court of law has ever <u>sentenced</u> Mr. Madison to be killed by the new methods, and there is no more proof that the State of Alabama is any more competent at managing these new forms of execution than its prior bungling shows on the method of electrocution.  More, numerous challenges exist in the states of Missouri and California to at least one of the methods the State now "offers" for Mr. Madison to "choose[.]"[ ] The situation is almost out of a Kafka novel.

> [ ] The Eighth Amendment requires states to take all feasible measures to minimize the risk of cruelty in administering capital punishment.  <u>Zant v. Stephens</u>, 462 U.S. 862 (1983).  No court would approve any method of implementation of the death sentence found to involve unnecessary cruelty in light of presently available alternatives.  <u>Furman v. Georgia</u>, 408 U.S. 238 (1972).  Other courts have recently found constitutional problems with various methods of execution.  <u>Fierro v. Gomez</u>, 865 F.Supp. 1387 (N.D. Cal. 1994) (finding California's gas chamber unconstitutional).

> [ ] Recent changes to the Alabama law regarding execution do not change this.  The new "option" of execution by another equally questionable method of inflicting death does not remove the problem with Mr. Madison; he is under an order of death by electrocution . . .  that order must either be changed, i.e., a re-sentencing and this clock thus turned back to allow another direct appeal, or this Honorable Court should rule on this method of execution.  The procedural requirements of the law mandate that Mr. Madison be given a sentence that complies with the Eighth Amendment and due process.  That must be done in order to

satisfy minimum concepts of fairness and procedural oversight. Or in the alternative that this Court determines that procedurally it can simply ignore the prior order and reform it to substitute the new method of execution, then it must permit subsequent attacks on this new method. This cannot be procedurally ignored because it is the State's own actions that have brought this situation about.

(Id.).

The only claim in Madison's Rule 32 petition regarding Alabama's method(s) of execution reads as follows:

F.   EXECUTIONS IN ALABAMA ARE CONDUCTED IN A MANNER THAT CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT

15.   The Eighth Amendment requires states to take all feasible measures to minimize the risk of cruelty in administering capital punishment. Zant v. Stephenson, 462 U.S. 862 (1983). No court would approve any method of implementation of the death sentence found to involve unnecessary cruelty in light of presently available alternatives. Furman v. Georgia, 408 U.S. 238 (1972). Other courts recently have found constitutional problems with various methods of execution. Fierro v. Gomez, 865 F. Supp. 1387 (N.D. Cal. 1994) (finding California's gas chamber unconstitutional).

16. In 1989, Horace Dinkins received electrical burns on his hip, left thigh, buttocks, lower back, right shoulder, and right leg. In 1990 the Commissioner of the Alabama Department of Corrections conceded that the state's electrocution equipment and [*sic*] that the state planned to replace the chair. That same old chair is still up at Holman Prison and is still used to carry out executions. The staff is undertrained and not qualified to operate such equipment. In 1995 and in 1996 Willy Clisby and Edward Horsley were executed and burned badly during the use of the chair. Kentucky and Tennessee have passed laws rejecting electrocution as the sole method of execution, and now provide a lethal injection option. Alabama continues to require electrocution for those convicted before a certain date. The Eighth Amendment forbids the kind of slow, painful, and excruciating death that would be inflicted upon Mr. Madison if the electric chair were to be used to execute him. Thus unless there is some other option this Petitioner should be granted relief because his electrocution would violate the Eighth and Fourteenth Amendment[s] to the United States Constitution.

(Tab R-37, ¶ II.F).

At trial, on direct appeal, and in his Rule 32 proceedings, Madison did not mention the issues he now raises in Claim 21 of his § 2254 petition: the "option" or "choice" Madison will face and the fact that he has never been sentenced to be killed by lethal injection. Instead, in the Rule 32 petition Madison argued that the electrocution method of execution was cruel and unusual. Madison also indicated in the Rule 32 petition that his objections to the electrocution method would be mooted if "there [were] some other option." (Id.).

As noted above, Madison's Rule 32 petition was filed on June 18, 1999, and was dismissed on August 25, 2005. It remained pending for a total of more than 6 years. A little more than three years after Madison's Rule 32 petition was filed, and more than three years before the Alabama Circuit Court dismissed it, "[o]n July 1, 2002, Alabama amended its statute prescribing the method of execution so that, in all cases where a death sentence has been imposed, execution shall be by lethal injection unless the person sentenced to death chooses electrocution as the means of execution." McGahee v. Campbell, No. 05-0042-KD-M, 2007 WL 3025192, at *15 (S.D. Ala. Feb. 14, 2007) (citing Ala. Code § 15-18-82(a)).[3] However, Madison made no effort to exhaust the claims by seeking to amend his Rule 32 petition or by filing a second Rule 32 petition regarding the method of execution claims that he sets forth in his § 2254 petition.

_____

[3] In denying Madison's Rule 32 petition, the Alabama Court of Criminal Appeals held that this change in the law rendered moot Madison's argument that execution by electrocution constitutes cruel and unusual punishment. (See Tab R-53; Madison, 999 So. 2d at 570). The Court agrees. See McGahee, 2007 WL 3025192, at *15 ("[B]ecause lethal injection is now the standard method of execution in the State of Alabama, and electrocution is only an alternative, claim [that Alabama's method of execution by electrocution constitutes cruel and unusual punishment] is moot.").

As a result, the method-of-execution claims contained in Madison's § 2254 petition are procedurally barred because they are unexhausted, and any attempt Madison might make now to exhaust his claims in the Alabama courts would be futile because the statute of limitations would bar such unexhausted claims.[4]   See McGahee, 2007 WL 3025192, at *11 n.6 (concluding that claim regarding Alabama's method of execution by legal injection was procedurally defaulted because the petitioner had not exhausted his claim in state court and the time to do so had lapsed; the undersigned explained that at the time the Alabama legislature amended the statute to make lethal injection the standard method of execution in Alabama, the petitioner's appeal of the denial of his Rule 32 petition was pending in the Alabama Court of Criminal Appeals, yet the petitioner did not file a second Rule 32 petition in the state court to challenge the constitutionality of lethal injection); Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999); Ala. R. Crim. P. 32.2(c).  Madison does not attempt to excuse the fact that his § 2254 method-of-execution claims have not been fully exhausted by claiming that they rest on newly discovered evidence.  See Ala. R. Crim. P. 32.2(c) & 32.1(e); McGahee, 2007 WL 3025192, at *11 n.6.

Therefore, inasmuch as Claim 21 is procedurally defaulted, and Madison has proffered no excuse for his procedural default, nor has he claimed that he is "actually innocent" of the crime for which he was convicted, it will not be considered for review on the merits and is **DENIED**.

With regard to Claim 34, Madison contends for the first time in his amended petition[5] that the fact that the "sitting District Attorney for Mobile County, Chris Galanos, testified as a

---

[4]   The Court of Criminal Appeals issued its certificate of judgment of affirmance of Madison's conviction and sentence on July 10, 1998.  (See Record Vol. 9, p. 25).

[5]   In his original § 2254 petition, Madison mentioned in support of his putative Brady claim that:

(Continued)

witness for the state[] as to the voluntariness of the Petitioner's statement . . . amounted to an improper vouching for and bolstering of the . . . police officer's testimony on the same subject[] by the jurisdiction's highest elected official."  (Doc. 30, ¶ C.1.).

This claim is procedurally defaulted because it is unexhausted and "any attempt [Madison] now makes to exhaust his claims in the Alabama courts would be futile under Alabama procedural default doctrine."  See Bailey, 172 F.3d at 1302-03 & 1305-06 (citing Snowden, 135 F.3d at 737).  Madison failed to present this claim on direct appeal, nor did he raise it in his Rule 32 petition.  If Madison brought it at the present time in state court, the statute of limitations would bar this unexhausted claim.  See id. at 1306; Ala. R. Crim. P. 32.2(c).

Because this claim is procedurally defaulted, and because Madison has proffered no excuse for his procedural default, nor has he claimed that he is "actually innocent" of the crime for which he was convicted, Claim 34 will not be considered for review on the merits and is **DENIED**.

### 2. Claims that the State Court Found Procedurally Barred – Claims 2-20, 22-24, & 33

As to those claims presented to the Alabama state courts and found to be procedurally barred, the Court must determine whether the state courts denied Madison's claims based on an

---

> "Hiding the ball" at any stage of a prosecution, let alone one for death, is a violation of the prosecutor's duty.  In this bizarre case, *the presiding district attorney himself actually took Mr. Madison's statement for admission at trial*.  He testified at the trial itself [ ]!  This is not only unusual, it lends an atmosphere of bias and "pulling out all the stops" to this trial that meant that any person who wanted to turn over this evidence [and testimony was elicited at trial regarding Mr. Madison's being under the influence of alcohol at the time he gave his statement] would have had to effectively attack his or her own boss!

(Doc. 1-2, ¶ III.C.21) (emphasis in original).

independent and adequate state procedural rule. <u>Bailey</u>, 172 F.3d at 1303. For this, the Eleventh Circuit has established a three-part test: "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001); <u>Mason v. Allen</u>, 605 F.3d 1114, 1120 (11th Cir. 2010) (quoting <u>Judd</u>). "Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law." <u>Id.</u> (internal citation and quotations omitted). "Finally, the state procedural rule must be adequate; <u>i.e.</u>, it must not be applied in an arbitrary or unprecedented fashion;" it must not be "manifestly unfair in its treatment of the petitioner's federal constitutional claim," <u>id.</u> (internal citation and quotations omitted); and it must be firmly established and regularly followed. <u>Cochran v. Herring</u>, 43 F.3d 1404, 1408 (11th Cir. 1995) (citing <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)). For the reasons stated below, the Court finds that Claims 2-20, 22-24, and 33 are defaulted in state court and are therefore procedurally barred and will not be considered on the merits.

Claims 2-16, 24, and 33 each allege ways in which Madison's trial and appellate counsel were ineffective. (Doc. 1-2, ¶¶ III.B (pp. 7-12 of the petition contain 15 separate ineffective assistance of trial counsel claims), I.42 & J (ineffective assistance of appellate counsel); Doc. 30 ¶¶ B (reiterating claims made in original petition and adding claim that trial counsel were ineffective "to the extent that any potential legal issues are procedurally barred because they were not raised at trial, and therefore could not be raised on direct appeal, in a Rule 32, or Federal Habeas Corpus proceeding[]")). These same claims were raised by Madison in his Rule 32 petition. The Alabama Court of Criminal Appeals held that they were procedurally barred.

With regard to the ineffective assistance of trial counsel claims, the Alabama Court of Criminal

Appeals stated:

> When Madison was last tried in 1994, the procedure established in *Ex parte* Jackson, 598 So. 2d 895 (Ala. 1992) was in effect. Under Jackson, newly appointed appellate counsel could extend the time for filing a motion for a new trial until the record of the trial proceedings was completed, and counsel could then raise an ineffective-assistance-of-trial-counsel claim in the motion for a new trial and on direct appeal. The Alabama Supreme Court, noting the problems Jackson created, overruled Jackson in *Ex parte* Ingram, 675 So. 2d 863 (Ala. 1996). However, from 1992, when the Supreme Court's opinion in Jackson was released, until it was overruled in 1996, Jackson was the law.
>
> We have taken judicial notice of the record of Madison's trial proceedings. See *Ex parte* Salter, 520 So. 2d 213 (Ala. Crim. App. 1987). Madison was sentenced to death in July 1994. New counsel was appointed for purposes of appeal to this Court, and counsel filed a Jackson motion to extend the time for filing a motion for a new trial. After the record was completed and forwarded to appellate counsel, counsel chose not to pursue any ineffective-assistance-of-trial-counsel claim. As we have stated:
>
>> If the appellant was convicted before the Alabama Supreme Court's decision in [*Ex parte*] Ingram, [675 So. 2d 863 (Ala. 1996),] newly appointed appellate counsel could have presented claims of ineffective assistance of counsel in a motion for new trial filed pursuant to *Ex parte* Jackson, 598 So. 2d 895 (Ala. 1992). Those same claims of ineffective assistance of trial counsel could have then been presented on direct appeal. Accordingly, if the appellant was convicted before the decision in Ingram, and the appellant was, in fact, represented by separate counsel, then the allegations of ineffective assistance of trial counsel presented in the Rule 32 petition are precluded from review, because the claims could have been, but were not, raised at trial and on appeal. Rule 32.2(a)(3) & (5), Ala. R. Crim. P.
>
> Andersch v. State, 716 So. 2d 242, 245 (Ala. Crim. App. 1997). See also Davis v. State, [Ms. CR-03-2086, March 3, 2006] --- So. 2d ---, --- (Ala. Crim. App. 2006), quoting Payne v. State, 791 So. 2d 383, 390 (Ala. Crim. App. 1999).

> Here, the circuit court correctly determined that Madison's claims of ineffective assistance of trial counsel were procedurally barred because they could have been, but were not, raised at trial or on appeal. <u>See</u> Rules 32.2(a)(3) and (a)(5) Ala. R. Crim. P.

(<u>See</u> Tab R-53; <u>Madison</u>, 999 So. 2d at 568-69).

As laid out above, relying on <u>*Ex parte* Jackson</u>, 598 So. 2d 895 (Ala. 1992), as well as Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5), the Alabama Court of Criminal Appeals refused to consider these claims because Madison raised them for the first time in his Rule 32 proceedings. The Eleventh Circuit has indicated that "[b]ecause Alabama's <u>Jackson</u> rule was an independent and adequate state ground," during the relevant time period, this Court is "barred from habeas review of [Madison]'s ineffective-trial-counsel claims unless he shows cause and prejudice to overcome Alabama's procedural bar." <u>Payne v. Allen</u>, 539 F.3d 1297, 1313-15 (11th Cir. 2008). Based on the Court's review of the state court rules applied and the record of Madison's trial, appeals of his conviction and sentence, and Rule 32 proceedings, the Court is satisfied that the Court of Criminal Appeals clearly and expressly stated that it relied on state procedural rules to resolve these claims without reaching their merits, that the state court's decision rested solidly on state law grounds and was not intertwined with an interpretation of federal law, that the relevant state procedural law was firmly established and regularly followed, and that the procedural bar was fairly and non-arbitrarily applied. Therefore, Claims 2-16 and 33, which were raised for the first time during Madison's Rule 32 proceedings, are defaulted in state court pursuant to independent and adequate state procedural grounds and are procedurally barred in this Court.

After reviewing the record, the Court is convinced that all of the ineffective assistance of trial counsel claims Madison raises in his habeas petition were addressed and procedurally barred in state court. However, assuming that Madison is raising any ineffective assistance of trial

counsel claims for the first time before this Court, those allegations constitute new claims that are unexhausted, and any attempt by Madison to raise the claims now in state court would be futile pursuant to the rules cited immediately above and applied by the Alabama Court of Criminal Appeals in Madison's Rule 32 proceedings, as well as barred by the applicable statute of limitations.  See Bailey, 172 F.3d at 1302, 1305-06; Ala. R. Crim. P. 32.2(c).

Before this Court, Madison contends that the ineffectiveness of his appellate counsel constitutes cause to excuse his failure to raise the ineffective assistance of trial counsel claims at trial or on appeal:  "[t]he ineffective assistance of counsel claims are essentially cascading.  If the claims are barred because they were not raised by trial counsel because they were ineffective, they should have been raised by appellate counsel.  If the claims are barred because they were not raised by appellate counsel, the appellate counsel were ineffective."  (Doc. 30, ¶ B.3.).

Madison is correct that "[a] petitioner can establish cause by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 690 . . . (1984)."  Payne, 539 F.3d at 1314 (quoting Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002)).    However, in order to "constitute cause," counsel's ineffectiveness must amount to "an independent constitutional violation."  See id. n.16 (quoting Coleman v. Thompson, 501 U.S. 722 (1991)).

With regard to Claim 24, Madison contended in his Rule 32 petition that his appellate counsel was ineffective for, among other things, "fail[ing] to . . . challenge the competency of trial counsel."  (R-32, p. 41). Regarding the ineffective assistance of appellate counsel claim that Madison alleged in his Rule 32 petition, the Alabama Court of Criminal Appeals stated:

> Madison asserted the following claim in his Rule 32 petition:
>
> > "It is well settled that any defendant is entitled to effective assistance of counsel at critical stages of any criminal

proceeding. Where appeal is provided for, an appellant is entitled to effective assistance of counsel. <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985). In the instant case, the petitioner was denied the effective assistance of counsel when his appellate attorney was disbarred during the course of his representation. The petitioner was deprived of a full and fair review of his appeal due to this, and the same appellate counsel failed to brief several crucial issues to the petitioner. Moreover, he failed to adequately supplement the record, and to challenge the competency of trial counsel. The failure of the appellate counsel to provide effective assistance resulted in the petitioner being denied his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the provisions of the Alabama Constitution, and Alabama law."

(C.R. 41.) This paragraph constitutes Madison's entire argument on this issue.

The circuit court when denying relief stated:

"Madison does not argue his appellate counsel was disbarred because of his performance in Madison's case nor does he proffer any facts in his Rule 32 petition indicating how he was prejudiced due to his appellate counsel being disbarred. <u>See</u> <u>Adkins v. State</u>, [930 So. 2d 524] (Ala. Crim. App. 2001) (holding that '[t]he fact that [Adkins' defense counsel have been disciplined by the Alabama State Bar on unrelated matters has no bearing on their performance in Adkins' trial'). Madison also fails to identify in . . . his Rule 32 petition one 'crucial issue' his appellate counsel failed to raise on direct appeal and fails to proffer what his appellate counsel would have added to the record that would have caused a different result on direct appeal. Finally, Madison fails to identify . . . one example of ineffective assistance from his trial counsel his appellate counsel should have raised on direct appeal. <u>See</u> <u>Coral v. State</u>, [900 So. 2d 1274] (Ala. Crim. App. 2004) (holding that '[e]ach sub-category [of ineffective assistance of counsel] is an independent claim that must be sufficiently ple[]d.'). The Court finds the allegation of ineffective assistance of appellate counsel in Madison's Rule 32 petition fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, they are summarily dismissed."

(C.R. 215.)  We agree with the circuit court's findings and adopt them as part of our opinion.

(See Tab R-53; Madison, 999 So. 2d at 568-69).

Alabama Rule of Criminal Procedure 32.6(b) provides:

> [t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.

This Court and the Eleventh Circuit have held that claims not addressed by the state courts on the basis that they were insufficiently pled under Alabama Rule of Criminal Procedure 32.6(b) are procedurally defaulted.  See Jenkins, 210 Fed. Appx. at 901 (noting that Rule 32.6(b) has "been firmly established and regularly followed by the Alabama courts. The Court of Criminal Appeals has consistently affirmed . . . lower court decisions that have summarily dismissed Rule 32 petitions that do not include specific facts which would entitle the petitioner to collateral relief." Id. (citations omitted)); James v. Jones, No. 06-0290-KD-M, 2007 WL 1455964, at *7 (S.D. Ala. May 17, 2007) (DuBose, J.); accord Williams v. Ferrell, No. 07-0617-WS-M, 2008 WL 725105, at *2 (S.D. Ala. 2008) (Steele, J.).

Because Madison's ineffective assistance of appellate counsel claim is procedurally defaulted, it cannot establish cause for the procedural default of his ineffective assistance of trial counsel claims.  Therefore, inasmuch as Madison has failed to establish cause for his procedural default of Claims 2-16, 24, and 33 or that he is "actually innocent" of the crime for which he was convicted, these claims will not be considered for review on the merits and are **DENIED**.

With regard to Claim 17, Madison claims that the Alabama courts erred by dismissing his Brady claim.  (Doc. 1-2, ¶ III.C.).  Neither the Alabama Court of Criminal Appeals nor the state circuit court, in considering Madison's Rule 32 petition, reached the merits of his Brady claim,

and Madison failed to present the claim at trial or on direct appeal. Instead, the state circuit court concluded that Madison's putative <u>Brady</u> claim was procedurally barred pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) on account of Madison's failure to comply with the rule of <u>Payne v. State</u>, 791 So. 2d 383, 398 (Ala. Crim. App. 1999), which mandates that a postconviction <u>Brady</u> claim raised for the first time in a Rule 32 petition must meet all five prerequisites of Alabama Rule of Criminal Procedure 32.1(e), which defines newly discovered evidence. (<u>See</u> Tab R-52, ¶ IV.51-54). The Alabama Court of Criminal Appeals, in reviewing the dismissal of Madison's Rule 32 petition, affirmed the circuit court's disposition of the <u>Brady</u> claim on the same ground. (<u>See</u> Tab R-53; <u>Madison</u>, 999 So. 2d at 569-70).

Based on the Court's review of the state court rules applied and the record of the state court proceedings, the Court is satisfied that the Alabama Court of Criminal Appeals clearly and expressly stated that it relied on state procedural rules to resolve this claim without reaching its merits, that the state court's decision rested solidly on state law grounds and was not intertwined with an interpretation of federal law, that the relevant state procedural law was firmly established and regularly followed, and that the procedural bar was fairly and non-arbitrarily applied. Therefore, Claim 17 is procedurally defaulted in state court pursuant to independent and adequate state procedural grounds and is procedurally barred in this Court. Inasmuch as Madison has proffered no excuse for his procedural default, nor has he claimed that he is "actually innocent" of the crime for which he was convicted, Claim 17 will not be considered for review on the merits and is **DENIED**.

With regard to Claims 18-20, 22, and 23, as explained in greater detail below, the Alabama courts relied solely on Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) to find that the claims were procedurally defaulted because they were not raised at trial or on

appeal.  As noted in the discussion of the ineffective assistance of counsel claims, the Eleventh

Circuit has previously held that a Rule 32 court's finding that a claim is procedurally defaulted

under Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) because it was not raised at

trial or on direct appeal constitutes a procedural default.  See Brownlee v. Haley, 306 F.3d 1043,

1065-66 (11th Cir. 2002); Mason v. Allen, 605 F.3d 1114, 1121 (11th Cir. 2010).

With regard to Claim 18, Madison contends that the "Alabama Court" erred by

dismissing his claim that the State of Alabama discriminated in the selection of the grand jury.

(Doc. 1-2, ¶ III.D.).  Neither the Alabama Court of Criminal Appeals nor the state circuit court in

considering Madison's Rule 32 petition reached the merits of the underlying claim, and Madison

failed to present the claim at trial or on direct appeal.  Instead, the state circuit court concluded

that Madison's putative claim of discrimination in the selection of the grand jury was

procedurally barred pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) on

account of Madison's failure to raise the claim at trial or on appeal.  (See Tab R-52, ¶ V.55).

Without explanation,[6] the Alabama Court of Criminal Appeals affirmed the circuit court's denial

of this claim.  (See Tab R-53; Madison, 999 So. 2d at 572).

Based on the Court's review of the state court rules applied and the record of the state

court proceedings, the Court is satisfied that the state circuit court clearly and expressly stated

that it relied on state procedural rules to resolve this claim without reaching its merits, that the

state court's decision rested solidly on state law grounds and was not intertwined with an

interpretation of federal law, that the relevant state procedural law was firmly established and

---

[6]    In light of the Alabama Court of Criminal Appeals' unexplained denial of this claim, the undersigned looks to the holding of the last reasoned state court opinion, in this instance the state circuit court's Rule 32 opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (federal courts "look through . . . subsequent unexplained denials to th[e last reasoned] opinion").

regularly followed, and that the procedural bar was fairly and non-arbitrarily applied. Therefore, Claim 18 is procedurally defaulted in state court pursuant to independent and adequate state procedural grounds and is procedurally barred in this Court. Inasmuch as Madison has proffered no excuse for his procedural default, nor has he claimed that he is "actually innocent" of the crime for which he was convicted, Claim 18 will not be considered for review on the merits and is **DENIED**.

With regard to Claim 19, Madison contends that the "Alabama Court" erred in dismissing his claim that the trial court had a *sua sponte* duty to recuse itself from deciding the case. (Doc. 1-2, ¶ III.E; Doc. 30, ¶ D.1.). However, neither the Alabama Court of Criminal Appeals nor the Alabama Circuit Court, in considering Madison's Rule 32 petition, reached the merits of this claim, and Madison failed to present the claim at trial or on direct appeal. Instead, the state circuit court concluded that Madison's putative claim that the trial court erred by failing to recuse itself was procedurally barred pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) on account of Madison's failure to raise the claim at trial or on direct appeal. (See Tab R-52, ¶ VI.56). The Alabama Court of Criminal Appeals,[7] in reviewing the dismissal of Madison's Rule 32 petition, affirmed the circuit court's disposition of the claim on the same ground. (See Tab R-53; Madison, 999 So. 2d at 571).

Based on the Court's review of the state court rules applied and the record of the state court proceedings, the Court is satisfied that the Alabama Court of Criminal Appeals clearly and expressly stated that it relied on state procedural rules to resolve this claim without reaching its

---

[7]    In light of the Alabama Supreme Court's unexplained affirmance of the Alabama Court of Criminal Appeals' denial of this claim, the undersigned looks to the holding of the last reasoned state court opinion, in this instance the Alabama Court of Criminal Appeals' opinion affirming the circuit court's dismissal of Madison's Rule 32 petition. See Ylst, 501 U.S. at 803-04.

merits, that the state court's decision rested solidly on state law grounds and was not intertwined with an interpretation of federal law, that the relevant state procedural law was firmly established and regularly followed, and that the procedural bar was fairly and non-arbitrarily applied. Therefore, Claim 19 is procedurally defaulted in state court pursuant to independent and adequate state procedural grounds and is procedurally barred in this Court. Inasmuch as Madison has proffered no excuse for his procedural default, nor has he claimed that he is "actually innocent" of the crime for which he was convicted, Claim 19 will not be considered for review on the merits and is **DENIED**.

With regard to Claim 20, Madison contends that the "issue of racial bias was neither properly decided nor procedurally barred." (Doc. 1-2, ¶ III.F). Neither the Alabama Court of Criminal Appeals nor the state circuit court, in considering Madison's Rule 32 petition, reached the merits of this claim, and Madison failed to present the claim at trial or on direct appeal. However, the state circuit court concluded that Madison's putative claim that his death sentence is "unconstitutional because it was sought and imposed pursuant to a pattern of racial bias" was procedurally barred.[8] The Alabama Court of Criminal Appeals,[9] in reviewing the dismissal of Madison's Rule 32 petition, affirmed the circuit court's disposition of the claim pursuant to

---

[8] The state circuit court found that the allegation was procedurally barred pursuant to Alabama Rule of Criminal Procedure 32.2(a)(3) because it could have been but was not raised at trial. (See Tab R-52, ¶ VII.57). The circuit court also found that the allegation was procedurally barred "because it was addressed and rejected on direct appeal." This finding is contradicted by the Alabama Court of Criminal Appeals' conclusion that the allegation was not raised on direct appeal. (See Tab R-53; Madison, 999 So. 2d at 571). The undersigned has reviewed the record. Neither Madison's briefing on appeal nor the petition for certiorari he filed following the denial of his appeal contains this allegation regarding "a pattern of racial bias."

[9] Supra note 7.

Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) on account of Madison's failure to raise the claim at trial or on direct appeal. (See Tab R-53; Madison, 999 So. 2d at 571).

Based on the Court's review of the state court rules applied and the record of the state court proceedings, the Court is satisfied that the Alabama Court of Criminal Appeals clearly and expressly stated that it relied on state procedural rules to resolve this claim without reaching its merits, that the state court's decision rested solidly on state law grounds and was not intertwined with an interpretation of federal law, that the relevant state procedural law was firmly established and regularly followed, and that the procedural bar was fairly and non-arbitrarily applied. Therefore, Claim 20 is procedurally defaulted in state court pursuant to independent and adequate state procedural grounds and is procedurally barred in this Court. Inasmuch as Madison has proffered no excuse for his procedural default, nor has he claimed that he is "actually innocent" of the crime for which he was convicted, Claim 20 will not be considered for review on the merits and is **DENIED**.

With regard to Claim 22, Madison contends that the "[t]he Alabama court erred in deciding that international law and procedural requirements could not be met under a Rule 32 petition." (Doc. 1-2, ¶ III.H). Neither the Alabama Court of Criminal Appeals nor the state circuit court, in considering Madison's Rule 32 petition, reached the merits of such a claim,[10] and Madison failed to present the claim at trial or on direct appeal. Instead, the state circuit court concluded that the putative claim in Madison's Rule 32 petition that his "execution would violate

---

[10] The claim, so labeled, is not clear. However, a review of the arguments listed in support of the claim reveal that the claim is substantively identical to Madison's claim in the Rule 32 petition that his execution would violate the Supremacy Clause in that Alabama provides no meaningful procedure for clemency in violation of international law, specifically the International Covenant on Civil and Political Rights, to which the United States is a signatory. (Compare Doc. 1-2, ¶ III.H, with Tab R-37, ¶ II.G).

the Supremacy Clause in that Alabama provides no meaningful procedure for clemency in violation of international law, specifically the International Covenant on Civil and Political Rights, to which the United States is a signatory," (see Tab R-37, ¶ II.G), was procedurally barred pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) on account of Madison's failure to raise the claim at trial or on direct appeal. (See Tab R-52, ¶ IX.60). The Alabama Court of Criminal Appeals,[11] in reviewing the dismissal of Madison's Rule 32 petition, affirmed the circuit court's disposition of the claim on the same ground. (See Tab R-53; Madison, 999 So. 2d at 571-72).

Based on the Court's review of the state court rules applied and the record of the state court proceedings, the Court is satisfied that the Alabama Court of Criminal Appeals clearly and expressly stated that it relied on state procedural rules to resolve this claim without reaching its merits, that the state court's decision rested solidly on state law grounds and was not intertwined with an interpretation of federal law, that the relevant state procedural law was firmly established and regularly followed, and that the procedural bar was fairly and non-arbitrarily applied. Therefore, Claim 22 is procedurally defaulted in state court pursuant to independent and adequate state procedural grounds and is procedurally barred in this Court. Inasmuch as Madison has proffered no excuse for his procedural default, nor has he claimed that he is "actually innocent" of the crime for which he was convicted, Claim 22 will not be considered for review on the merits and is **DENIED**.

With regard to Claim 23, Madison contends that the "[t]he Alabama court erred in denying the claim on double[-]counting the aggravating factor." (Doc. 1-2, ¶ III.I). Neither the

---

[11]   Supra note 7.

Alabama Court of Criminal Appeals nor the state circuit court, in considering Madison's Rule 32 petition, reached the merits of such a claim, and Madison failed to present the claim at trial or on direct appeal. Instead, the state circuit court concluded that Madison's putative claim in his Rule 32 petition that "the Petitioner's right to an individualized determination of the appropriateness of his sentence was denied when the trial court double-counted both the elevator and the aggravator of killing a police officer in imposing a death sentence," (see Tab R-37, ¶ II.I), was procedurally barred pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5) on account of Madison's failure to raise the claim at trial or on direct appeal. (See Tab R-52, ¶ X.61). The Alabama Court of Criminal Appeals,[12] in reviewing the dismissal of Madison's Rule 32 petition, affirmed the circuit court's disposition of the claim on the same ground. (See Tab R-53; Madison, 999 So. 2d at 572).

Based on the Court's review of the state court rules applied and the record of the state court proceedings, the Court is satisfied that the Alabama Court of Criminal Appeals clearly and expressly stated that it relied on state procedural rules to resolve this claim without reaching its merits, that the state court's decision rested solidly on state law grounds and was not intertwined with an interpretation of federal law, that the relevant state procedural law was firmly established and regularly followed, and that the procedural bar was fairly and non-arbitrarily applied. Therefore, Claim 23 is procedurally defaulted in state court pursuant to independent and adequate state procedural grounds and is procedurally barred in this Court. Inasmuch as Madison has proffered no excuse for his procedural default, nor has he claimed that he is

---

[12] Supra note 7.

"actually innocent" of the crime for which he was convicted, Claim 23 will not be considered for review on the merits and is **DENIED**.

### B. Claims Reviewed on the Merits – Claims 1 and 25-32

The Court will now consider the merits of Madison's claims that have not been procedurally defaulted.

Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider an application for a writ of habeas corpus submitted by a state prisoner. Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003). Because Madison's petition was filed after April 24, 1996, it is subject to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L 104-132, § 104, 110 Stat. 1214, 1218-1219. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997). Under that statute, the role of the federal court[] is strictly limited." Jones v. Walker, 496 F.3d 1216, 1226 (11th Cir. 2007). The federal court no longer has "plenary authority to grant habeas relief," as its "authority to grant relief is now conditioned on giving deference to the states." Id.

Pursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted on claims previously adjudicated on the merits by the Alabama courts unless the state courts' adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court clarified the application of § 2254(d)(1) as follows:

> [A] state court acts contrary to clearly established federal law if it applies a legal rule that contradicts our prior holdings or if it

> reaches a different result from one of our cases despite confronting indistinguishable facts. [See 28 U.S.C. § 2254(d)(1).] The statute also authorizes federal habeas corpus relief if, under clearly established federal law, a state court has been unreasonable in applying the governing legal principle to the facts of the case. [See id.] A state determination may be set aside under this standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled.

Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)); see also Lockyer v. Andrade, 538 U.S. 63, 73 (2003).

The Supreme Court defined "clearly established Federal law" as "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer, 538 U.S. at 71-72. The Eleventh Circuit explained that Supreme Court precedent can be considered "clearly established" if it "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), overruled on other grounds by Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001). The Supreme Court later clarified that "[a]voiding these pitfalls does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

The "unreasonable application" inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. This inquiry "must be assessed in light of the record the [state] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004) (per curiam) (citations omitted). A state court's application of federal law is deemed objectively unreasonable when it "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court

case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The Supreme Court has pointed out more than once that "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). See also Williams, 529 U.S. at 412 ("an unreasonable application of federal law is different from an incorrect or erroneous application of federal law.").

With regard to § 2254(d)(2), the Supreme Court stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell ("Miller-El I"), 537 U.S. 322, 340 (2003). And § 2254(e)(1) provides that:

> In a proceeding instituted by an applicant for a writ of habeas corpus by a person in custody pursuant to the judgement of a State Court, a determination of a factual issue made by a State Court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Miller-El I, 537 U.S. at 340 (a federal court can "disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones, 496 F.3d at 1226-27 (11th Cir. 2007) (holding that § 2254(d)(2)'s standard was satisfied where the petitioner showed "clearly and convincingly" that the state court's decision "contained an unreasonable determination of fact." Id. (internal quotations omitted)).

For the reasons stated below, the Court finds that Claims 1 and 25-32 are without merit and are due to be **DENIED**.

With regard to Claim 1, Madison contends that the Alabama Court of Criminal Appeals erred by affirming the circuit court's summary dismissal of his Rule 32 petition. (Doc. 1-2, ¶ III.A). Madison claims that this result "cannot be reconciled with well established Alabama law which prohibits summary dismissal of a petition which is meritorious on its face, nor with clearly established federal law which mandates due process." (Id., ¶ A.8). Madison maintains that his Rule 32 petition contained clear and specific allegations that, if true, would have entitled him to relief. (Id. ¶¶ 8-9). In particular, Madison points to his allegation in the Rule 32 proceeding that trial counsel were ineffective for failing to investigate and present mitigating evidence that would have, if true, entitled him to relief. (Id., ¶ 12). As such, Madison contends that he met his burden of pleading and was entitled to an opportunity to present evidence in light of the fact that there were disputed issues of fact. (Id. ¶¶ 8-13). Madison also argues that the Alabama Court of Criminal Appeals improperly "focused on the amount of time that had expired during the pendency of th[e] Rule 32 action," which, according to Madison, is "less important than the fact that, once the Circuit Court decided to act, it denied him the ability to respond, and deprived him of due process." (Id. ¶ 13).

In its memorandum opinion affirming the circuit court's denial of relief on this claim, the Alabama Court of Criminal Appeals[13] stated:

> Madison argues that the circuit court erred in adopting the State's proposed order denying relief on the day that it was filed without first providing him the opportunity to respond to the motion.
>
> . . .

---

[13]   Supra note 7.

Initially, we note that it was not error for the circuit court to adopt the State's proposed order when denying relief. As we have repeatedly stated:

> "'The Alabama Supreme Court and this Court have repeatedly upheld a circuit court's wholesale adoption of a proposed order prepared by one of the parties.'" [Citations omitted].

[]

Nor do we agree with Madison's assertion that he was not given notice or an opportunity to respond to the State's motion for dismissal. The record shows that within 30 days of the filing of the Rule 32 petition the State responded to the petition and filed a motion to dismiss. In both the response and the motion to dismiss, the State asserted that Madison had failed to comply with the specificity requirements of Rule 32.6(b), Ala. R. Crim. P., because Madison failed to assert a factual basis for each claim. The State also asserted that many of Madison's claims were procedurally barred because they could have been, but were not, raised at trial or on appeal. See Rules 32.2(a)(3) and (a)(5), Ala. R. Crim. P. Madison was placed on notice in July 1999 of the State's defense to the Rule 32 petition and had over six years to amend the petition or to take other action. Madison failed to pursue the case.

The Supreme Court has held: "'Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition without requiring a response from the district attorney.'" Bishop v. State, 608 So. 2d 345, 347-48 (Ala. 1992) (quoting and agreeing with Judge Bowen's dissent in Bishop v. State, 592 So. 2d 664, 667 (Ala. Crim. App. 1991)).

Madison relies on the Supreme Court's decision in *Ex parte MacEwan*, 860 So. 2d 896 (Ala. 2002), to support his contention that he was denied an opportunity to respond to the motion to dismiss and that, therefore, the case must be remanded to the circuit court to give him that opportunity. However, in MacEwan, the State filed a motion to dismiss MacEwan's petition, attaching an affidavit executed by MacEwan's trial counsel, and the motion was not served on MacEwan. The Supreme Court noted that the affidavit was significant because it disputed MacEwan's claims of ineffective-assistance-of-counsel. In reversing the judgment and

remanding the case, the Supreme Court held that MacEwan was denied an opportunity to rebut the assertions made in the affidavit. The Supreme Court stated:

> "We cannot say with full confidence that the State's failure to serve its motion to dismiss (with the attached affidavit) on MacEwan's Rule 32 counsel did not prejudice MacEwan, because the trial judge neglected to enter a written order stating his reasons for summarily dismissing the petition. While such a written order is not required in a Rule 32 proceeding, it is sound judicial practice, particularly given the facts presented in this case. See <u>Bowers v. State</u>, 709 So. 2d 494, 495 (Ala. Crim. App. 1995). Therefore, in order to allow the trial court to properly inquire into the merits of MacEwan's ineffective-assistance-of-counsel claim, we reverse the judgment of the Court of Criminal Appeals and remand the case for that court to remand it for the trial court to hold an evidentiary hearing."

860 So. 2d at 897-98. Clearly, this case is factually distinguishable from <u>MacEwan</u>. Here, there was no affidavit attached to the State's motion to dismiss, and the circuit court entered a detailed order denying Madison's Rule 32 petition. Moreover, the Supreme Court implicitly recognized in <u>MacEwan</u> that in some instances when a petitioner is not notified that the State has filed a motion to dismiss there may be no prejudice. Clearly, this case represents just such an instance. Madison was notified of the State's asserted grounds of preclusion more than six years before the circuit court denied the Rule 32 petition.

This case languished in the circuit court for years with little action. In granting the State's renewed motion to dismiss on the day the motion was filed, the circuit court concluded the long-delayed postconviction proceedings. The issues raised in Madison's Rule 32 petition were either procedurally barred or precluded. Therefore, if any error did occur, it was harmless. Cf. <u>Young v. State</u>, 600 So. 2d 1073 (Ala. Crim. App. 1992) (prosecutor's failure to file response to Rule 32 petition was harmless); <u>Moran v. State</u>, 649 So. 2d 1292 (Ala. Crim. App. 1993) (prosecutor's failure to file timely answer to Rule 32 petition was harmless).

[]

Madison also argues in his brief to this Court that the circuit court confused his burden to "plead" facts with his burden to "prove" facts. He asserts that he pleaded facts that, if true, would entitle him to relief.

Rule 32.6(b), Ala. R. Crim. P., states:

> "The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."

When describing a petitioner's burden under Rule 32.6(b), Ala. R. Crim. P., this Court has stated:

> "'Rule 32.6(b) requires that the *petition* itself disclose the *facts* relied upon in seeking relief.' <u>Boyd v. State</u>, 746 So. 2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a *conclusion* 'which, if true, entitle[s] the petitioner to relief.' <u>Lancaster v. State</u>, 638 So. 2d 1370, 1373 (Ala. Crim. App. 1993). It is the allegation of *facts* in pleading which, if true, entitle a petitioner to relief. After *facts* are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R. Crim. P., to present evidence proving those *alleged facts*."

<u>Boyd v. State</u>, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003).

> "The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The *full* factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). <u>See</u> <u>Bracknell v. State</u>, 883 So. 2d 724 (Ala. Crim. App. 2003). To sufficiently plead

an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must 'identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' <u>Strickland v. Washington</u>, 466 U.S. 668, 690 . . . , but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."

<u>Hyde v. State</u>, [Ms. CR-04-1092, March 3, 2006], 950 So. 2d 344, 356, 2006 Ala. Crim. App. LEXIS 33, *26-27 (Ala. Crim. App. 2006).

A review of the record shows that the circuit court did not confuse Madison's burden of *pleading* facts with his burden of *proving* facts. An example of Madison's failure to plead any factual grounds is the following claim in Madison's Rule 32 petition:

"Trial counsel failed to adequately investigate and present evidence of Mr. Madison's mental illness during the guilt and penalty phase of the trial. If not for trial counsel's failure to investigate, develop, and present this evidence at trial there is a reasonable probability that the outcome would have been different."

(C.R. 34-35.) Madison stated no facts to support this claim. Clearly, this claim failed to meet the specificity requirements of Rule 32.6(b), Ala. R. Crim. P.

(Tab R-53; <u>Madison</u>, 999 So. 2d 561, 566-568 (Ala. Crim. App. 2006) (emphasis in original)).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Madison failed to establish that his rights were violated by the trial court's summary dismissal of his Rule 32 petition.  Moreover, as our sister court in the Middle District recently explained:

[n]either . . . the failure of a state court to conduct an evidentiary hearing on such a petition nor summary dismissal of the petition implicates the Constitution[,] as states have no obligation to provide this avenue of relief, and when they do, nothing in the Constitution requires that . . . an evidentiary hearing be held or a particular type of order be entered denying the petition. <u>See</u> <u>Murray v. Giarratano</u>, 492 U.S. 1, 6-8 . . . (1989); <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 . . . (1987); <u>Golston v. Attorney General of the State of Alabama</u>, 947 F.2d 908, 911 (11th Cir. 1991).

To the extent Burden bases these claims on alleged violations of state law, he is likewise entitled to no relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 . . . (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); <u>Beverly v. Jones</u>, 854 F.2d 412 (11th Cir. 1988). On appeal from denial of the Rule 32 petition, the Alabama Court of Criminal Appeals determined that the actions of the trial court in summarily denying the Rule 32 petition did not violate state law. "[A] state court's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved." <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir. 1992); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1054-55 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes . . . . [Any claim based on] interpretation of . . . [a state's] laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). "Federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation." <u>Hunt v. Tucker</u>, 93 F.3d 735, 737 (11th Cir. 1996); <u>Walton v. Attorney General of the State of Alabama</u>, 986 F.2d 472, 475 (11th Cir. 1993) (federal court is bound by decision of state court that no state law has been violated). Burden has failed to show that the Alabama appellate court's construction of Alabama law violated his federal right to due process. In light of the foregoing, Burden is due no relief with respect to his claims challenging the trial court's summary dismissal of his Rule 32 petition as these claims fail to implicate denial of any constitutionally protected right.

<u>Burden v. Jones</u>, No. 3:05-CV-1128-WKW, 2008 WL 4767487, at *14 (M.D. Ala. Oct. 28, 2008).

Thus, Madison's contention that his constitutional rights were violated by the trial court's summary dismissal of his Rule 32 petition, as alleged in Claim 1, is without merit and is **DENIED**.

With regard to Claim 25, Madison contends that the "[t]he court's denial of petitioner's change of venue motion resulted in an unfair and constitutionally invalid trial." (Doc. 1-2, ¶ III.K). The substance of this claim was raised in Madison's direct appeal to the Alabama Court of Criminal Appeals, and that court denied the claim on its merits. (See Tab R-49; Madison, 718 So. 2d at 99-100). Madison then raised this claim in his petition for certiorari review of his direct appeal to Alabama's Supreme Court. (See Tab R-34 ¶ 7; Tab R-50, *Ex parte* Madison, 718 So. 2d at 105). The Alabama Supreme Court affirmed the Alabama Court of Criminal Appeals' disposition of this claim without specifically addressing it. (Tab R-50, *Ex parte* Madison, 718 So. 2d at 106).

In addressing Madison's claim regarding the trial court's denial of his change of venue motion, the Alabama Court of Criminal Appeals[14] stated:

> The appellant contends that the trial court erred in denying his motion for a change of venue. He argues that there was media coverage of the crime throughout Mobile County, by newspapers, radio, and television, and that, although the crime occurred nine years before this third trial, eight members of the venire indicated that they had prior knowledge of the case.
>
> Venue should be changed when there is a showing of inherently prejudicial publicity that has so saturated the community as to have a probable impact upon the jurors. Jackson v. State, 516 So. 2d 726 (Ala. Cr. App. 1985). Here, the appellant has presented no evidence with regard to prior publicity. With regard to probable impact, the record reveals that 8 of 60 veniremembers responded that they had some prior knowledge concerning the appellant's

---

[14] Supra note 7.

case. The trial court conducted an individual voir dire of those eight and permitted the appellant to challenge for cause all of them to whom he objected. One was struck because he had "already given us a number of reasons," another stated that he "believe[d] that if the Defendant was indicted and he's here, probably had one or two court trials already, that he's probably guilty, sir," and the third had been acquainted with the victim through her job as a substitute teacher. The remaining veniremembers stated that their knowledge of the appellant's case was general in nature and that they could render a fair and impartial verdict. Therefore, the trial court properly denied the appellant's motion for a change of venue.

(Tab R-49; <u>Madison</u>, 718 So. 2d at 99-100).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Madison failed to establish that his constitutional rights were violated by the trial court's denial of his motion for a change of venue. Presumably, Madison relies on § 2254(d)(1) in presenting this habeas claim, as he argues that the Court's decision not to change the venue violated the dictates laid out in <u>Rideau v. Louisiana</u>, 373 U.S. 723 (1963), as well as <u>Sheppard v. Maxwell</u>, 384 U.S. 333 (1966). (Doc. 1-2, ¶ III.K). However, the Alabama Court of Criminal Appeals did not unreasonably or erroneously apply federal law in making its determination. In <u>Rideau</u>, the United States Supreme Court's holding that a change of venue was warranted was based exclusively on the fact that a video recording of the defendant making a detailed confession of his crimes while surrounded by police officers was broadcast multiple times in the community in which he was tried. 373 U.S. at 726-27. In finding due process violations in <u>Sheppard</u>, the Supreme Court noted the high level of trial publicity to which the jurors were exposed *during* trial and the "carnival atmosphere" in the courtroom. 384 U.S. at 352-60. It is reasonable to conclude that the evidence of trial publicity presented in this case does not compare with that shown in either <u>Rideau</u> or <u>Sheppard</u>.

In addition, the Eleventh Circuit has held that the Florida Supreme Court's finding "that [a defendant]'s motion for change of venue was properly denied was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent" when evidence showed that the trial commenced less than six months after the crimes occurred, articles were published in the local paper that "may have been somewhat prejudicial or inflammatory[,]" and "that 92% of potential jurors and 11 of the 12 jurors at trial had read newspaper accounts of the crime." Gaskin v. Sec'y, Dep't. of Corr., 494 F.3d 997, 1005 (11th Cir. 2007) (internal quotations omitted). In the present case, the record shows, as the Alabama Court of Criminal Appeals found, that Madison has presented no evidence of prior publicity, relying instead on generalized and conclusory assertions of such publicity, and that only 8 of the 60 potential jurors had prior knowledge of the case, far short of the 92% alleged in Gaskin. Of those potential jurors with prior knowledge, the ones not struck for cause indicated that their knowledge of the case was general in nature and that they felt able to render a fair and impartial verdict.

Thus, Madison's contention that his constitutional rights were violated by the trial court's denial of his motion for a change of venue, as alleged in Claim 25, is without merit and is **DENIED**.

With regard to Claim 26, Madison contends that "[t]he indictment erroneously charged two counts of capital murder for a single offense." As such, "this Court cannot be certain that the jury unanimously found Mr. Madison guilty of one offense." Madison also contends that this charging scheme subjected him to double jeopardy in violation of the Fifth Amendment of the United States Constitution. (Doc. 1-2, ¶ III.L). Madison raised this claim in his direct appeal to the Alabama Court of Criminal Appeals, and the court denied the claim on its merits. (See Tab R-49; Madison, 718 So. 2d at 95-96). The Supreme Court of Alabama then specifically

addressed the unanimity issue of this claim on certiorari review of Madison's direct appeal and affirmed the judgment of the Court of Appeals on the merits. (See Tab R-50; *Ex parte* Madison, 718 So. 2d 104, 105 (Ala. 1998)).

Addressing the unanimity issue in this claim, the Alabama Supreme Court stated:

> Madison contends that the trial court, by allowing the jury to consider both counts, rather than requiring the State to elect one of the two counts to submit to the jury, violated his right to a unanimous verdict, which is guaranteed by various constitutional provisions, including the Sixth and Fourteenth Amendments to the Constitution of the United States. He argues that because the jury did not specify the count on which it found him guilty, neither he nor this Court can know whether he was convicted by a jury that was unanimous as to a single count.
>
> The State contends that its purpose in charging Madison in a two-count indictment was to meet every probable contingency of the evidence. The State argues that § 13A-5-40(a)(5) states only one offense (the capital murder of a law enforcement officer) and states two alternative theories ("while [the] officer ... is on duty" or "because of some official or job-related act") on which the jury may base its conviction. Thus, the State argues, the trial court did not err in refusing to require it to elect which count would go to the jury. We agree.
>
> The Supreme Court of the United States has held that the Sixth Amendment right to a jury trial guarantees a defendant the right to a unanimous verdict in a federal trial. Andres v. United States, 333 U.S. 740, 748 . . . (1948).[FN2] However, the Supreme Court has held that, at least in noncapital cases, neither the Sixth Amendment nor the Due Process Clause of the Fourteenth Amendment guarantees a defendant the right to a unanimous jury verdict in a state trial.[FN3] See Johnson v. Louisiana, 406 U.S. 356 . . . (1972).[FN4]
>
> > FN2. The Sixth Amendment to the Constitution of the United States provides:
> > " *In all criminal prosecutions, the accused shall enjoy the right to a* speedy and public *trial, by an impartial jury* of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and

cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence." (Emphasis added.)

FN3. The Fourteenth Amendment provides in pertinent part: "No State shall ... deprive any person of life, liberty, or property, without *due process of law* . . . . " (Emphasis added.)

FN4. A plurality of the Supreme Court has noted that a defendant's right to a unanimous jury verdict "is more accurately characterized as a due process right than as one under the Sixth Amendment." Schad v. Arizona, 501 U.S. 624, 634, n. 5 . . . (1991).

In Schad v. Arizona, 501 U.S. 624, 629 . . . (1991), a plurality of the Supreme Court avoided extending the federal unanimity requirement to a state capital defendant, by concluding that even if the unanimity requirement applied it would not provide relief to the defendant.[FN5] The defendant in Schad, 501 U.S. at 628 . . ., was indicted by a state grand jury for capital murder, which the relevant statute defined as "murder which is ... wil[l]ful, deliberate or premeditated ... or which is committed ... in the perpetration of, or attempt to perpetrate, ... robbery." (Quoting Ariz. Rev. Stat. Ann. § 13-452 (Supp. 1973)). At trial, the prosecution sought to prove the capital murder offense by advancing both a theory of premeditated murder and one of felony murder. Schad, 501 U.S. a 629. . . . The jury returned a general verdict of guilty, without specifying whether it had reached a unanimous agreement either as to premeditated murder or as to felony murder. Id. Responding to the defendant's argument that the federal unanimity requirement should be applied to state capital defendants, the Supreme Court stated: "Even assuming a requirement of jury unanimity *arguendo,* that assumption would fail to address the issue of what the jury must be unanimous about." Id. at 630. . . . The Supreme Court emphasized that " 'there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' " Id. at 632 (citation omitted).

FN5. We note that regardless of whether the federal right to a unanimous verdict extends to Alabama capital defendants, the Constitution of Alabama of 1901 has long provided criminal defendants a parallel guaranty of a unanimous jury verdict. See Baader v. State, . . . 77 So.

370, 372 (1917); <u>Brown v. State</u>, . . . 231 So. 2d 167, 169-70 (1970); <u>Dixon v. State</u>, . . . 167 So. 340, 348 (1936).

The rationale of <u>Schad</u> has been adopted in numerous jurisdictions. <u>See</u> <u>People v. Milan</u>, . . . 507 P.2d 956, 959, 961-62 (1973) (holding that there is no error in instructing the jury on alternative theories if there is sufficient evidence that the defendant committed first-degree murder); <u>People v. Travis</u>, . . . 525 N.E. 2d 1137, 1148 (stating that the jury must be unanimous on the ultimate question of guilt or innocence, not on the theory applied), <u>appeal denied</u>, . . . 530 N.E. 2d 260 (1988), <u>cert. denied</u>, 489 U.S. 1024 . . . (1989); <u>State v. Fuhrmann</u>, 257 N.W. 2d 619, 626 (Iowa 1977) (holding that first-degree murder is one crime, although the defendant can commit the crime in several ways); <u>State v. Wilson</u>, . . . 552 P.2d 931, 936 (1976) (holding that the accused cannot impeach a verdict on the basis that the jury could not agree on the theory of first-degree murder), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>State v. Quick</u>, . . . 597 P.2d 1108 (1979); <u>Commonwealth v. Devlin</u>, . . . 141 N.E. 2d 269, 274-76 (1957) (holding that a homicide conviction is acceptable even if the jury does not specify a theory); <u>People v. Embree</u>, 246 N.W. 2d 6, 7 (1976) (holding that when the evidence shows that the defendant is guilty of premeditated and felony murder, a jury instruction on unanimity is irrelevant); <u>State v. Buckman</u>, . . . 468 N.W. 2d 589, 593 (1991) (holding that the jury need agree only that the defendant committed first-degree murder, not on the theory by which it reached the verdict); <u>State v. Tillman</u>, 750 P.2d 546, 563-65 (Utah 1987) (holding that the jury need not agree on the theory supporting the conviction if there is sufficient evidence to support either theory); <u>but</u> <u>see</u> <u>State v. Murray</u>, . . . 782 P.2d 157 (1989) (holding that the trial court erred in giving jury instructions that offered alternative theories of murder).

Like the claim of the defendant in <u>Schad</u>, Madison's claim may be assessed without addressing the question whether the federal unanimity requirement applies to capital defendants in state cases, but by addressing the analytical focal point of the unanimity requirement, that is, the offense. <u>See</u> <u>Schad</u>, 501 U.S. at 630 . . . .

Section 13A-5-40(a)(5) defines the single capital offense of the murder of a law enforcement officer, but allows as the basis of the conviction two alternative theories of proof:  (1) the theory that the murder was committed while the officer was "on duty"; or (2) the theory that the murder was committed because of "some official or job-related act." <u>See</u> <u>generally</u> <u>Tucker v. State</u>, 537 So. 2d 59, 61 (Ala. Crim. App. 1988) ("[The indictment] charged only one

offense-capital murder of a peace officer-which was committed for one of two reasons: either because the officer was trying to arrest [the defendant's] stepmother or because the officer was trying to arrest [the defendant].”); see also Schad, 501 U.S. at 636 . . . (“If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.”). The jury was required to be unanimous only as to its verdict finding that Madison intentionally murdered a law enforcement officer in violation of § 13A-5-40(a)(5), not as to whether the murder occurred while the law enforcement officer was on duty or occurred because of an official act on the part of the officer.[FN6] See Schad, 501 U.S. at 629 . . . .

> FN6. In Schad, 501 U.S. at 649-50 . . . , Justice Scalia, concurring in part of the judgment, observed:
>
>> “[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission . . . . That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her.”

The jury rendered a unanimous verdict finding Madison guilty of the offense of murdering a law enforcement officer as that offense is defined by § 13A-5-40(a)(5). The trial court did not err in refusing to require the State to elect a single count, or theory, on which the jury was required to agree. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

(Tab R-50; *Ex parte* Madison, 718 So. 2d at 105).

Having reviewed the record in this matter, the Court agrees with the Alabama Supreme

Court that Madison failed to establish that his constitutional rights were violated by the trial

court's refusal to require the State to elect a single count or theory on which the jury was required to agree. Indeed, the Alabama Supreme Court's interpretation of Schad v. Arizona, 501 U.S. 624 (1991), is in line with that of the Eleventh Circuit. See United States v. Verbitskaya, 406 F.3d 1324, 1334 (11th Cir. 2005) (Pursuant to Schad, "the district court did not need to instruct the jury to unanimously agree on which theory supported the verdict.")

With regard to the double-jeopardy issue in this claim, which was not addressed by the Alabama Supreme Court, the Alabama Court of Criminal Appeals[15] stated:

> The appellant contends that the indictment improperly charged two counts of capital murder for a single offense. He argues that presenting § 13A-5-40(a)(5), Code of Alabama 1975, as two offenses exposed him to double jeopardy, enhanced his punishment, and deprived him of constitutional protections . . .
>
> The first count of the appellant's indictment charged him with the intentional shooting of Julius Schulte while Schulte was "on duty as a police officer"; the second count charged that the shooting occurred while Schulte was "performing an official or job-related act." Both counts are alternative methods of proving a single offense. See § 13A-5-40(a)(5), Code of Alabama 1975. The trial court instructed the jury that there were "two counts contained in the indictment, each charging the Defendant with a capital offense," and stated that, if the jurors were not convinced that the State had proven "each of the essential elements of either of the capital offenses beyond a reasonable doubt," they should find the appellant not guilty of "the capital offense as charged in the indictment" and consider the lesser included offense of murder. The court further instructed the jury that, if it found the appellant guilty of "the capital felony as charged in the indictment," it would not be necessary to state the count or counts of the indictment on which they found him guilty. The jury subsequently returned a verdict form that stated, "We, the Jury, find the Defendant guilty of the capital felony as charged in the indictment." The trial court thereafter sentenced the appellant to death by electrocution.

---

[15] See Ylst, 501 U.S. at 803-04.

In Floyd v. State, 486 So. 2d 1309 (Ala. Crim. App. 1984), aff'd, 486 So. 2d 1321 (Ala. 1986), cert. denied, 479 U.S. 1101 . . . (1987), the appellant was charged with eight counts of murder during robbery, § 13A-5-40(a)(2), Code of Alabama 1975, four of which related to the taking of a taxi and four of which related to the taking of currency. In that case, this Court stated that, because the purpose and effect of the joinder of offenses was to meet every possible contingency that the evidence might show, rather than to convict the appellant of multiple offenses, the State was not required to elect the count on which the case would be submitted to the jury. In the present case, the appellant was indicted on two, rather than eight, counts of capital murder, and the trial court likewise did not require him to elect the count on which he was to be tried. However, the appellant was convicted of only one offense, and the indictment was proper.

In Meyer v. State, 575 So. 2d 1212 (Ala. Crim. App. 1990), the appellant was indicted on three counts of capital murder for one killing. He was found guilty of three counts of intentional murder, and the trial court imposed a single sentence of 50 years' imprisonment. This Court, citing Ball v. United States, 470 U.S. 856 . . . (1985), remanded the case for the circuit court to vacate two of the convictions. In Ball, the United States Supreme Court explained that a second conviction is an impermissible punishment, even if it results in no greater sentence, [FN2] because it may have potential adverse collateral consequences such as delayed parole eligibility or an increased punishment for recidivism. In the present case, however, unlike Ball, there was no second conviction. The double jeopardy concerns, therefore, are inapplicable.

FN2. Ball's sentences were to be served concurrently.

In Tucker v. State, 537 So. 2d 59, 61 (Ala. Crim. App. 1988), the appellant was charged in a single indictment with the murder of a peace officer while the officer was on duty or in the act of arresting or attempting to arrest the appellant or his stepmother. The appellant moved to dismiss the indictment, on the grounds that it charged two crimes and that it was so ambiguous that he could not determine what acts constituted the crime. This Court found that the indictment was properly framed to conform to the proof, in that it charged only one offense -- capital murder of a peace officer -- which was committed for one of two reasons: either because the officer was trying to arrest the appellant's stepmother or the appellant himself.

In the present case, although the instructions of the trial court were confusing, the Court sufficiently informed the jury with regard to the burden of proof and the necessity for unanimity in its verdict. The jurors were aware that the appellant was guilty of only one offense, as evidenced by their verdict form, which stated the single offense of "the capital felony as charged in the indictment." Their death penalty decision therefore was not improperly affected by the framing of the indictment.

(Tab R-49; <u>Madison</u>, 718 So. 2d at 95-96).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Madison failed to establish that he was subject to double jeopardy by the trial court's refusal to require the State to elect a single count or theory on which the jury was required to agree. Presumably, Madison relies on § 2254(d)(1) in presenting this habeas claim, as he specifically argues that the allegedly defective indictment and charge to the jury resulted in a double-jeopardy violation under <u>Blockburger v. United States</u>, 284 U.S. 299 (1932). (Doc. 1-2, ¶ III.L).

The <u>Blockburger</u> test is applied to determine "whether [an appellant] ha[s] been charged twice for the same offense," in violation of the double jeopary clause prohibiting multiple punishments for the same offense. <u>United States v. Ibarguen-Mosquera</u>, No. 09-14476, 2011 WL 447870, at *7 (11th Cir. Feb. 10, 2011). <u>See</u> <u>also</u> <u>United States v. Nyhuis</u>, 8 F.3d 731, 735 (11th Cir. 1993) ("[T]he <u>Blockburger</u> test will normally be the only inquiry required when a court is confronted with a double jeopardy attack."). "'[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.'" <u>Ibarguen-Mosquera</u>, 2011 WL 447870, at *7 (quoting <u>Blockburger</u>, 284 U.S. at 304).

The Eleventh Circuit has held that "where two counts are 'charged under the same statutory provision,' Blockburger may require an inquiry beyond the elements of the offense to determine whether there are separate crimes 'in *substance as well as form.*'" Id. (quoting United States v. Hassoun, 476 F.3d 1181, 1186 (11th Cir. 2007)) (emphasis in original). In line with this holding, the Alabama Supreme Court made a reasonable inquiry and determined that the two counts charged in Madison's indictment, rather than separate offenses, were two alternative theories of proof for a single offense provided for in Ala. Code. § 13A-5-40(a)(5). (Tab R-50; *Ex parte* Madison, 718 So. 2d at 108).

Moreover, even if the Blockburger test were to indicate a double-jeopardy violation, the only remedy available would be that prescribed in Ball v. United States, 470 U.S. 856 (1985). Ball states that when a defendant improperly receives two convictions for the same act, "the only remedy . . . is for the [trial] [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions. 470 U.S. at 864. The Eleventh Circuit has applied the remedy in Ball to double-jeopardy violations found using the Blockburger test. See United States v. Freyre-Lazaro, 3 F.3d 1496, 1507 (11th Cir. 1993); United States v. Bonilla, 579 F.3d 1233, 1243 (11th Cir. 2009). The Court agrees with the Alabama Court of Criminal Appeals that Madison is entitled to no relief for a double-jeopardy violation under Ball because he has received only one conviction and one corresponding sentence.

In addition, "the Double Jeopardy Clause imposes no prohibition to simultaneous prosecutions[,]" so "even where the [Double Jeopardy] Clause bars cumulative punishment for a group of offenses, 'the Clause does not prohibit the State from prosecuting [a defendant] for such multiple offenses in a single prosecution.'" Ball, 470 U.S. at 860 n.7 (quoting Ohio v. Johnson,

467 U.S. 493, 500 (1984)).  Therefore, the State of Alabama's pursuit of Madison's conviction under multiple counts did not implicate double jeopardy.

Thus, Madison's claim that his constitutional rights to a unanimous verdict and against double jeopardy were violated by the trial court's refusal to require the state to elect one of two counts to submit to the jury, as alleged in Claim 26, is without merit and is **DENIED**.

With regard to Claim 27, Madison contends that "[t]he trial court's refusal to find statutory and non-statutory mitigating circumstances deprived Mr. Madison of a reliable sentencing determination as required by the Eighth and Fourteenth Amendments to the United States Constitution and Alabama law." (Doc. 1-2, ¶ III.M; Doc. 30, ¶ D.3).  Madison raised this claim in his direct appeal to the Alabama Court of Criminal Appeals, and the court denied the claim on its merits.  (See Tab R-49; Madison, 718 So. 2d at 96-97).  Madison then raised this claim in his petition for certiorari review of his direct appeal to Alabama's Supreme Court.  (See Tab R-34 ¶ 2; Tab R-50, Ex parte Madison, 718 So. 2d at 105).   The Alabama Supreme Court affirmed the Alabama Court of Criminal Appeals' disposition of this claim without specifically addressing it.  (Tab R-50, Ex parte Madison, 718 So. 2d at 106).

In addressing this claim on direct appeal, the Alabama Court of Criminal Appeals[16] stated:

> The appellant contends that the trial court erred in failing to find statutory and nonstatutory mitigating circumstances.  He argues with regard to the statutory circumstances that the trial court had before it evidence that the capital offense was committed while he was "under the influence of extreme mental or emotional disturbance" and that his "capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired," § 13A-5-51(2) and (6), Code of

---

[16] Supra note 7.

Alabama 1975. Specifically, he refers to defense expert Dr. Barry Amyx's testimony that he suffered from a delusional disorder, a psychotic illness similar to schizophrenia, and that he also suffered from persecutory delusions and a "thought disorder." Dr. Amyx expressed the opinion that the appellant could not fully appreciate the criminality of his conduct. In addition, the appellant argues that State's witness Ollie Doss testified that he looked "crazy" when she saw him on the night of the offense. He also contends that the trial court misunderstood the burden of proof with regard to mitigating circumstances and incorrectly believed that the appellant had to show that he was insane.

The trial court found with regard to § 13A-5-51(2), Code of Alabama 1975, that the capital offense was committed while the appellant was under the influence of a mental or emotional disturbance but that the disturbance was not extreme. The court also found that the appellant had a personality disorder but that he was not psychotic. Defense expert Dr. Claude Brown had testified that, in his opinion, the appellant suffered from a personality disorder, rather than a psychosis, and that there was no evidence that the appellant was delusional at the time of the murder. It is apparent from the trial court's sentencing order that the court was aware of the appropriate burden of proof with regard to insanity. The court noted that Dr. Amyx had conducted a single 90-minute session with the appellant five years after the homicide, while Dr. Claude Brown had met with the appellant at least three times, two of those occasions occurring within five months of the murder. In addition, the court found that the purposefulness of the appellant's behavior undermined his claim of extreme disturbance and that his ability to clearly express his feelings and his opposition to previous use of an unwarranted insanity defense refuted his claim. The trial court's finding that, from a preponderance of the evidence, the § 13A-5-51(2) mitigating circumstance did not exist, is supported by the record. Because the appellant did not object to the trial court's sentencing order, this issue is affirmed under the plain error standard. Rule 45A, Ala.R.App.P.

With regard to the § 13A-5-51(6) mitigating circumstance, the trial court found that the preponderance of the evidence suggested that the appellant could appreciate the criminality of his conduct and conform his conduct to the requirements of law. The court also again stated that the appellant had a personality disorder but that he was not psychotic. The record supports the court's finding.

With regard to nonstatutory mitigating circumstances, the appellant argues that there was ample evidence offered at the penalty phase

to support the existence of such circumstances. Specifically, he refers to Dr. Amyx's testimony as to the appellant's mental illness, his mother's plea for mercy, a friend's testimony concerning a positive change in the appellant since the killing, and the appellant's own statement, in which he expressed remorse and apologized to the victim's family. In addition, the appellant argues that the trial court's sentencing order was insufficient because it did not specifically identify the mitigating circumstances found and weighed by the court.

However, the order of the trial court stated, in pertinent part, that the court "considered the testimony of lay witnesses and all other mitigating evidence offered by the Defendant, including that not enumerated as statutory mitigating circumstances." The court was not required to state that it considered a particular mitigating circumstance, and the lack of a specific finding did not mean that the court did not consider that evidence. _Ex parte_ Haney, 603 So. 2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297 [ ] (1993). With regard to the appellant's statement, although the appellant said that he was sorry that the victim's family had suffered, he also said that "there was no perceived action on my part for this to occur," and he again claimed that the killing was committed in self-defense. Further, although the appellant said that he was asking for forgiveness, he also said that, because he knew that God had already forgiven him, he was "at peace" with himself. Similarly, the testimony of the appellant's friend was actually that the appellant would now talk about the Lord, that he appeared concerned about people, and that he was not as quick to get angry. The trial court's finding that no nonstatutory mitigating circumstances existed is supported by the record.

(Tab R-49; Madison, 718 So. 2d at 96-97).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Madison failed to establish that his constitutional rights were violated by the trial court's refusal to find statutory and non-statutory mitigating circumstances. As the Alabama Court of Criminal Appeals noted, the sentencing order explained why the trial court found that the statutory mitigating circumstances that Madison argues were supported by evidence—those set forth in §§ 13A-5-51(2) and (6) of the Alabama Code—did not obtain. (See Tab R-49; Madison, 718 So. 2d at 96-97; Tab R-48, Sentencing Order, ¶ II(2) & (6)). Moreover,

the trial court explicitly noted that it "considered" the testimony of Dr. Amyx to the effect that the defendant was under a mental or emotional disturbance while the capital offense was committed.[17]  (Tab R-48, Sentencing Order, ¶ II(2)).  The trial court also specifically stated that it "considered the testimony of lay witnesses and all other mitigating evidence offered by the defendant, including that not enumerated as statutory mitigating circumstances"—i.e., non-statutory mitigating circumstances—incident to finding that "the aggravating circumstances overwhelmingly outweigh[ed] the mitigating circumstances."  Id. at ¶ II(7).

The authorities Madison cites in his habeas petition do not cast aspersion on the Alabama Court of Criminal Appeals' analysis.  Madison cites a number of federal cases holding that the sentencer may not be prevented from considering or categorically refuse to consider any relevant mitigating evidence.  See Penry v. Lynaugh, 492 U.S. 302 (1989); Lockett v. Ohio, 438 U.S. 586 (1978); Jackson v. Dugger, 931 F.2d 712 (11th Cir. 1991); Hitchcock v. Dugger, 481 U.S. 393 (1978); Eddings v. Oklahoma, 455 U.S. 104 (1982) (the trial court's statements made clear that the "judge did not evaluate the evidence in mitigation and find it wanting as a matter of fact; rather he found that *as a matter of law* he was unable even to consider the evidence," id. at 113 (emphasis in original); likewise, the Court of Criminal Appeals found "that the evidence in mitigation was not relevant because it did not tend to provide a legal excuse from criminal responsibility[,]" id.); Skipper v. South Carolina, 476 U.S. 1 (1986) (reversing based on exclusion of relevant mitigating evidence); Woodson v. North Carolina, 428 U.S. 280, 303-04 (1976) (sentencing statute was unconstitutional in that it "fail[ed] to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant").

---

[17]  Despite this consideration, the trial court found that "the disturbance not being extreme, . . . the § 13A-5-51(2) mitigating circumstance . . . does not exist."  (Tab R-1, Sentencing Order, ¶ II(2)).

However, there is no evidence or argument suggesting that the trial court in Madison's case was prevented from considering or categorically refused to consider any mitigating circumstance.[18] On the contrary, as noted above, the trial court engaged in an analysis based on the record with respect to both of the statutory mitigating circumstances that Madison argues were supported by evidence as well as the non-statutory mitigating evidence presented.

Finally, Madison argues that "Alabama courts have not hesitated to remand capital cases where the sentencing orders do not articulate with sufficient specificity the mitigating circumstances considered in sentencing a defendant to death."   (See Doc. 1-2, ¶ III.M.73). Madison's argument on this point is based solely on Alabama law.  Therefore, it fails to state a claim of unreasonable application of federal law and is not a cognizable federal claim.  Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law"); Davis v. Jones, 506 F. 3d 1325, 1332 (11th Cir. 2007) ("We will not question the Alabama appellate court's application of state law in federal habeas corpus review." (citing Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir. 1983) ("Questions

---

[18]   Although the trial court refused to apply the statutory mitigating circumstance set forth in § 13A-5-51(6) of the Alabama Code, its decision was based on a factual analysis.  The sentencing order states in pertinent part:

> The preponderance of the evidence suggests that the defendant could appreciate the criminality of his conduct and conform his conduct to the requisites of law.  He had a personality disorder, but was not psychotic; consequently, the § 13A-5-51(6) circumstance does not exist and is not considered.

(Tab R-29, Sentencing Order, ¶ II(6)).

of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes.")).[19]

Thus, Madison's contention that his constitutional rights were violated by the trial court's refusal to find statutory and non-statutory mitigating circumstances, as alleged in Claim 27, is without merit and is **DENIED**.

With regard to Claim 28, Madison contends that "[t]he trial court refused to instruct the jury on manslaughter, denying Mr. Madison protections guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and by the Alabama Constitution and Alabama law." (Doc. 1-2, ¶ III.N; Doc. 30, ¶ D.2). Madison raised this claim in his direct appeal to the Alabama Court of Criminal Appeals, and the court denied the claim on its merits. (See Tab R-49; Madison, 718 So. 2d at 99). Madison then raised this claim in his petition for certiorari of his direct appeal to Alabama's Supreme Court. (See Tab R-34 ¶ 2; Tab R-50, *Ex parte* Madison, 718 So. 2d at 105). The Alabama Supreme Court affirmed the Alabama Court of Criminal Appeals' disposition of this claim without specifically addressing it. (Tab R-50, *Ex parte* Madison, 718 So. 2d at 106).

In addressing Madison's claim regarding the fact that the trial court did not instruct the jury on manslaughter, the Alabama Court of Criminal Appeals[20] stated:

---

[19] Madison also cites Parker v. Dugger, 498 U.S. 308 (1991), an opinion which is inapposite to the instant petition. In Parker, the United States Supreme Court held, based on the record, that the trial judge had found and weighed non-statutory mitigating circumstances, despite the fact that the trial court had not "discuss[ed] evidence of, or reach[ed] any explicit conclusion concerning nonstatutory mitigating evidence." Id. at 311, 314. The United States Supreme Court then held that the Florida Supreme Court had erred when it concluded that the trial court had not found non-statutory mitigating circumstances, but nonetheless upheld the petitioner's death sentence, despite the fact that the Florida Supreme Court simultaneously struck two of the four aggravating circumstances upon which the trial judge had relied. The factual, legal, and procedural posture of Parker differ markedly from that of the petition at bar, and, thus, it is simply inapplicable to this case.

The appellant contends that the trial court erred in refusing his requested jury instruction on manslaughter because, he says, he testified to facts that provided a rational basis for the lesser charge. He argues that the jury could have found that the killing arose from a sudden heat of passion caused by provocation because he stated that he argued with the victim, that he wanted to leave, and that the victim would not let him. He also argues that "he perceived ... an attack upon him" because the victim was opening the car door and he believed that the victim had a gun in his hand and was going to shoot him.

However, mere words or gestures will not reduce a homicide from murder to manslaughter, Harrison v. State, 580 So.2d 73 (Ala. Cr. App. 1991), and undisputed evidence established that the appellant failed to show legal provocation. The victim's car was found with the door closed, and his gun was found in a snapped holster, sitting on top of his clipboard on the car seat. He had been shot twice, once in the back of the head and also in the left temple, and gunpowder residue was deposited around this wound. Thus, there was no rational basis to support the appellant's requested instruction on the lesser included offense, and it was properly refused by the trial court. Dill v. State, 600 So.2d 343 (Ala. Cr. App. 1991), aff'd 600 So.2d 372 (Ala. 1992), cert. denied, 507 U.S. 924 . . . (1993).

(Tab R-49; Madison, 718 So. 2d at 99).

Presumably, Madison relies on § 2254(d)(1) in presenting this habeas claim, as he argues that the court's decision not to charge the jury on manslaughter violates Beck v. Alabama, 447 U.S. 625 (1980). (Doc. 1-2, ¶ III.N). However, Madison's argument is misplaced. The Eleventh Circuit has held that Beck's prohibition against an all-or-nothing choice between death or acquittal is not violated where the law permits the charging of lesser included non-capital offenses if the evidence supports it. See Maples v. Allen, 586 F.3d 879, 894 (11th Cir. 2009). In the instant case, Alabama law permitted the charging of a lesser included non-capital offense.

---

[20] Supra note 7.

However, the evidence did not support a finding of manslaughter; thus, a jury charge on this lesser included offense was properly refused by the trial court.

In Maples, the Eleventh Circuit noted that the Alabama Court of Criminal Appeals had concluded "that a [jury] charge on manslaughter due to voluntary intoxication was not required" in a capital murder trial because, among other reasons, "there was no rational basis for convicting [the defendant] of manslaughter due to intoxication[]" based on Alabama law. Id. at 893. The Eleventh Circuit held that "[t]he Alabama appellate court's decision about the charge on manslaughter due to voluntary intoxication is neither contrary to, nor an unreasonable application of, established federal law." Id. Similarly, in the present case, the Alabama Court of Criminal Appeals determined that there was no rational basis under Alabama law to support a jury charge of manslaughter based on the evidence presented, (Tab R-49; Madison, 718 So. 2d at 99), and that decision is neither contrary to nor an unreasonable application of established federal law.

Thus, Madison's contention that his constitutional rights were violated by the trial court's refusal to instruct the jury on manslaughter, as alleged in Claim 28, is without merit and is **DENIED**.

With regard to Claim 29, Madison contends that the trial court erred by denying Madison's Batson motion and not requiring the state to articulate its reasons for striking black jurors, despite the fact that Madison "made a prima facie showing of discrimination in the selection of [his] jury under Batson v. Kentucky, 476 U.S. 79 (1986) and *Ex parte* Jackson, 516 So. 2d 768 (Ala. 1986)." (Doc. 1-2, ¶ III.O). Madison raised this claim in his direct appeal to the Alabama Court of Criminal Appeals, and the court denied the claim on its merits. (See Tab R-49; Madison, 718 So. 2d at 101-02). Madison then raised this claim in his petition for

certiorari review of his direct appeal to Alabama's Supreme Court.  (See Tab R-34 ¶ 2; Tab R-50, _Ex parte_ Madison, 718 So. 2d at 105).  The Alabama Supreme Court affirmed the Court of Criminal Appeals' disposition of this claim without specifically addressing it.  (Tab R-50, _Ex parte_ Madison, 718 So. 2d at 106).

In addressing Madison's claim regarding the denial of Madison's <u>Batson</u> motion and the fact that the trial court did not require the state to articulate its reasons for striking black jurors, the Alabama Court of Criminal Appeals[21] stated:

> The appellant contends that the trial court erred in finding that he failed to establish a prima facie case under <u>Batson v. Kentucky</u>, 476 U.S. 79 . . . (1986).  The record reveals the following with regard to the appellant's _Batson_ challenge: The appellant objected at trial to the State's striking 6 of 13 blacks from the venire,[FN3] and the trial court instructed the prosecutor to give race-neutral explanations for his strikes. The prosecutor responded that the appellant first was required to make out a prima facie case and argued that, because the appellant had shown only that blacks had been struck, his challenge must fail because the jury contained a greater percentage of blacks than was originally on the venire. The appellant responded, citing _Ex parte_ Bird, 594 So. 2d 676 (Ala. 1991), for the principle that evidence that jurors share only the characteristic of race and are heterogen[e]ous as the community as a whole in all other respects, including gender, age, occupation, and social and economic conditions, can raise an inference of discrimination, and noted, "that's what we have here." He then noted specifically that two females and four males had been struck; that Mr. D., who was a laborer at SeaPac had said nothing during the jury selection process; and that Mr. M. worked at Ingalls and had a wife in law enforcement. Thereafter, the appellant stated that the struck jurors were both female and male, younger and older, who worked as laborers, a housing board director, a food server, and an industrial worker. In addition, he stated that the prosecutor had asked few questions on voir dire examination, which would give a reason to believe that there was any basis other than race for the strikes. The trial court responded that the housing board employee had given many answers and that the State could

---

[21]    <u>Supra</u> note 7.

articulate reasons for striking Mr. B., who was the industrial worker. The court also noted that the percentage of blacks serving on the jury was far greater that the percentage of blacks in the county and then asked whether the appellant could show any bias on the part of the State. After the appellant failed to offer evidence of bias, the prosecutor reiterated that the appellant had not made a prima facie showing of racial discrimination. The trial court then denied the appellant's *Batson* motion.

> FN3. Two black veniremembers were struck for cause, one by the State and one by the appellant, and the appellant also struck an alternate juror who was black, which left six blacks on the jury panel.

In Batson v. Kentucky, 476 U.S. 79 . . . (1986), the United States Supreme Court set out the components of a prima facie case of racial discrimination in jury selection. In addition to showing that the State used peremptory challenges to remove members of a cognizable group to which he belongs and relying upon the fact that peremptory strikes permit discrimination, a claimant also must show that these facts and any other relevant facts raise an inference that the prosecutor used his strikes in a discriminatory manner. In *Ex parte* Branch, 526 So.2d 609, 622-23 (Ala. 1987), Alabama['s] Supreme Court explained that relevant factors could include, but were not limited to, the following: evidence that the jurors shared only the characteristic of their group membership and were heterogeneous in all other respects; a pattern of strikes against black jurors; past conduct of the prosecutor; type and manner of the prosecutor's questions during voir dire, including desultory voir dire; type and manner of questions to the challenged juror, including a lack of questions or meaningful questions; disparate treatment of veniremembers with the same characteristics or type of responses; disparate examination of members of the venire; circumstantial evidence of intent due to the use of most challenges to strike blacks; and the use of peremptory challenges to dismiss all or most black jurors.

The appellant argues on appeal that the State struck 7 of 13 qualified black potential jurors, or over half of the black venirepersons, and that it used 7 of its 18 strikes to remove those black potential jurors. He further argues that 3[FN4] of the blacks removed by the State did not answer any questions on voir dire and that the prosecutor's office has a history of excluding qualified black potential jurors based on race.

The appellant incorrectly states in his reply brief that the number of unquestioned jurors was four.

However, the only evidence actually offered by the appellant at trial was as follows: that the State struck 4 black males and 2 black females, who were variously employed; that the State struck 7 of 15 blacks, and that 3 veniremembers who were struck had not responded to any questions on voir dire. Despite repeated requests by the trial court that he produce more evidence, including, specifically, evidence of bias, the appellant offered nothing further in support of his Batson claim.

The appellant's evidence was insufficient to show that the struck jurors shared only the characteristic of race. It also was insufficient to show a pattern of strikes against black jurors, particularly in light of the increased percentage of blacks who served on the jury relative to both the initial panel and the population of the county.[FN5] The only evidence that arguably could lead to an inference of discrimination was a lack of questions or meaningful questions to 3 of the challenged jurors. The trial court's determination as to whether the defendant has established purposeful racial discrimination should be reversed only if it is clearly erroneous. *Ex parte* Branch, supra. The trial court's denial of the appellant's Batson motion in the present case was not clearly erroneous.

FN5. The prosecutor informed the trial court that the 60-member panel was 75 % white and that the percentage of blacks on the final panel was "almost double" that on the initial panel. The trial court also noted that the final jury panel was 50% black, "far more" than the 30% population of blacks in the county.

(Tab R-49; Madison, 718 So. 2d at 101-02).

Presumably, Madison relies on § 2254(d)(1) in presenting this habeas claim by arguing a violation of Batson. However, the Eleventh Circuit has held that "it is not true that all peremptory strikes of black venirepersons are for racial reasons. In making out a *prima facie* case, the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal. The defendant must identify facts

and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken black venirepersons." <u>United States v. Allison</u>, 908 F.2d 1531, 1538 (11th Cir. 1990) (internal citations and quotations omitted). Only "[o]nce a *prima facie* case has been established[] [does] the burden shift[] to the prosecutor to articulate a clear, reasonably specific and neutral explanation for challenging the black jurors." <u>Id.</u> at 1536.

Having reviewed the record, the Court agrees with the Alabama Court of Criminal Appeals that the only arguable evidence of a <u>Batson</u> violation Madison presented at trial was that 3 black venirepersons who were struck did not respond to any questions on voir dire. (<u>See</u> Tab R-49; <u>Madison</u>, 718 So. 2d at 102). When asked to produce evidence to support an inference of discrimination or bias, Madison presented nothing further. <u>See id.</u> As such, Madison did not establish a *prima facie* case of discrimination under <u>Batson</u>, and therefore the prosecution was not required to articulate reasons for challenging black jurors. Thus, Madison's contention that his constitutional rights were violated by the trial court's denial of his <u>Batson</u> motion and refusal to require the State to articulate its reasons for striking black jurors, as alleged in Claim 29, is without merit and is **DENIED**.

With regard to Claim 30, Madison contends that "[t]he trial court's override of the jury's verdict of life imprisonment without parole violated Mr. Madison's rights under the Sixth and Fourteenth Amendments to the United States Constitution." (Doc. 1-2, ¶ III.P; Doc. 30 ¶¶ 4, 6). Madison raised this claim in his direct appeal to the Alabama Court of Criminal Appeals, and the court denied the claim on its merits. (<u>See</u> Tab R-49; <u>Madison</u>, 718 So. 2d at 103-04). Madison then raised this claim in his petition for certiorari review of his direct appeal to Alabama's

Supreme Court.  (See Tab R-34 ¶ 2; Tab R-50, *Ex parte* Madison, 718 So. 2d at 105).   The Alabama Supreme Court affirmed the Court of Criminal Appeals' disposition of this claim without specifically addressing it.  (Tab R-50, *Ex parte* Madison, 718 So. 2d at 106).

In addressing Madison's claim regarding the trial court's override of the jury's verdict of life without parole, the Alabama Court of Criminal Appeals[22] stated:

> The appellant contends that the trial court erred in overriding the jury's verdict of life imprisonment without parole pursuant to § 13A-5-46, *Code of Alabama* 1975.  He argues that § 13A5-47, *Code of Alabama* 1975, permits a standardless override which, he says, violates the Sixth and Fourteenth Amendments to the United States Constitution because it fails to consider the jury's role in the sentencing process and permits arbitrary and uneven imposition of the death penalty.[FN6]

> > FN6. The appellant concedes that the sentencing scheme is constitutional on Eighth Amendment grounds, pursuant to Harris v. Alabama, 513 U.S. 504 . . . .(1995).

> However, in Spaziano v. Florida, 468 U.S. 447, 459 (1984), the United States Supreme Court determined that capital sentencing is not a trial for purposes of the Sixth Amendment's guarantee of a jury trial. In addition, the Court stated that a capital sentence need not be imposed by a jury in order to satisfy the Fourteenth Amendment requirement that the death penalty not be imposed arbitrarily or discriminatorily. The Alabama override provision requires the trial court to "consider the recommendation of the jury contained in its advisory verdict," § 13A-5-47(e), *Code of Alabama* 1975, unless the verdict has been waived.  In addition, § 13A-5-53, *Code of Alabama* 1975, mandates a detailed and exacting review of the trial court's findings and decision, and subsection (b)(3) specifically requires the appellate court to review whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases.

> The record reveals that the appellant did not object to the trial court's override of the jury's advisory verdict. Therefore, reviewed under the plain error standard, the trial court's override is affirmed.

---

[22]   Supra note 7.

(See Tab R-49; Madison, 718 So. 2d at 103-04).

Presumably, Madison relies on § 2254(d)(1) in presenting this habeas claim, as he argues that the trial court's override of the jury's verdict of life imprisonment without parole violated Madison's rights under the Sixth and Fourteenth Amendments to the United States Constitution. However, Madison has failed to point to any Supreme Court precedent predating Madison's trial and sentencing that "would have compelled a particular result in th[is] case." See Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), overruled on other grounds by Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001). Instead, Madison cites Harris v. Alabama, 513 U.S. 504 (1995) for the proposition that the Supreme "Court left *open* whether standardless override violates the Fourteenth Amendment." (Doc. 1-2, ¶ P.88) (emphasis added); see Harris, 513 U.S. at 512 & 514 (affirming judicial override of jury recommendation of sentence of life without parole; "hold[ing] that the Eighth Amendment does not require the State to define the weight the sentencing judge must accord an advisory jury verdict"; and noting "If the Alabama statute indeed has not had the effect that we or its drafters had anticipated, such unintended results would be of little constitutional consequence. An ineffectual law is for the state legislature to amend, not for us to annul."). Thus, Harris does not support Madison's argument that the Alabama courts acted unreasonably in applying Supreme Court precedent.

Madison also relies on Carroll v. State of Alabama, 852 So. 2d 833, 836 (Ala. 2002), which held that a "jury's recommendation of life imprisonment without the possibility of parole is to be treated as a mitigating circumstance" before a death sentence may be imposed. (See Doc. 30, ¶ D.6). Madison maintains that, in light of Carroll, his death sentence is "invalid," and that, "[a]t the least, the case must be remanded to the trial court for resentencing." (Id.). However, the Alabama Court of Criminal Appeals recently held that "Carroll . . . do[es] not

apply retroactively to cases on collateral review." Bush v. State, No. CR 03-1902, 2009 WL 1496826, at *8 (May 29, 2009). Madison's direct review concluded with the United States Supreme Court's denial of his certiorari petition on November 16, 1998, (Tab R-51; Madison v. Alabama, 525 U.S. 1006 (1998)), over three years before the Carroll opinion issued. Thus, per the holding of Bush, Carroll is inapplicable to Madison's petition for collateral relief. Moreover, Carroll is an Alabama case applying Alabama law. See Carroll, 852 So.2d at 836 n.1 (declining to decide issues raised by Ring v. Arizona, 536 U.S. 584 (2002)). For that reason, the Carroll opinion does not provide Madison with any support for his federal habeas claims. Pulley, 465 U.S. at 41; Davis, 506 F. 3d at 1332; Carrizales, 699 F.2d at 1054-55. The same logic applies to Madison's reliance on Martin v. State, 931 So.2d 774 (Ala. 2005).[23] Thus, Madison's contention that his constitutional rights were violated by the trial court's override of the jury's recommendation of life imprisonment without parole, as alleged in Claim 30, is without merit and is **DENIED**.

With regard to Claim 31, Madison contends that "[t]he trial court denied full voir dire of the potential jurors when it stopped the defense from asking about the circumstances under which jurors would impose the death penalty." (Doc. 1-2, ¶ III.Q). Madison raised this claim in his direct appeal to the Alabama Court of Criminal Appeals, and the court denied the claim on its merits. (See Tab R-49; Madison, 718 So. 2d at 100-01). Madison then raised this claim in his petition for certiorari review of his direct appeal to Alabama's Supreme Court. (See Tab R-34 ¶ 2; Tab R-50, *Ex parte* Madison, 718 So. 2d at 105). The Alabama Supreme Court affirmed the

---

[23]    Madison's argument that Ring v. Arizona, 536 U.S. 584 (2002), provides him with grounds for relief also fails. Like Carroll, Ring does not apply retroactively to cases on collateral review. See Schriro v. Summerlin, 542 U.S. 348, 358 (2004).

Alabama Court of Criminal Appeals' disposition of this claim without specifically addressing it.

(Tab R-50, *Ex parte* Madison, 718 So. 2d at 106).

In addressing Madison's claim regarding the fact that the trial court stopped the defense from asking about the circumstances under which jurors would impose the death penalty, the Alabama Court of Criminal Appeals[24] stated:

> The appellant contends that the trial court erred in denying him full voir dire of potential jurors with regard to the circumstances under which they would impose the death penalty. Specifically, he argues, he should have been allowed to inquire if jurors who had stated that they could not impose the death sentence could do so in wartime.
>
> The record reveals that, after veniremember R.B. stated that he did not support the death penalty, the trial court permitted the appellant to ask him whether, in "a situation like wartime, like we're in the war with Hitler, Saddam Hussein or something like that," he would oppose "going to war or our country going to wa[r] and taking other people's lives in the protection of our country." The court next questioned veniremember P. H., asking whether " if you were selected as a juror in this case-and I'm not interested in war time . . . . there is no set of facts that you . . . could vote for death by electrocution?" After P.H. answered, "Yes, sir," the trial court told him that it would now let defense counsel "ask anything he wishes, to and including war time." However, when counsel attempted to ask P. H., "[C]ould you believe in State imposed killing if it was a war time and like Richard said, he could. Do you feel like in war time you might be able to do something like that," the court stated, "I'm not interested in war time . . . . So, don't ask about it."
>
> The appellant did not object to the trial court's instruction or further attempt to question the juror concerning his beliefs about killing during a time of war. He now argues that his desired inquiry was whether the juror could impose a death penalty during wartime. However, it is clear from the record that his question at trial actually was whether the juror could support killing in defense of his country during wartime. This question was not sufficiently related to the issue of capital punishment to be relevant, and an

---

[24]  Supra note 7.

> affirmative response would not have rehabilitated the juror with
> regard to the imposition of the death penalty. Therefore, the trial
> court's refusal to permit the question was not an abuse of
> discretion.

(See Tab R-49; Madison, 718 So. 2d at 100-01).

Madison cites Swain v. Alabama, 380 U.S. 202, 221 (1965), Rosales-Lopez v. United States, 451 U.S. 182, 185 (1975), and Turner v. Murray, 476 U.S. 28, 40 (1986), none of which relate to the issue at hand. Rosales-Lopez and Turner specifically concern the right to raise issues of racial and ethnic prejudice at voir dire, while Swain addressed the racial implications of a peremptory strike system used in jury selection. None of these cases addresses the issue of a defendant's right to determine a juror's stance on capital punishment.

The United States Supreme Court has held that "the proper standard for determining when a prospective juror *may* be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985) (internal quotations omitted) (emphasis added). However, "[a] juror who could never vote for capital punishment, regardless of the court's instructions, . . . *should* be stricken for cause. United States v. Brown, 441 F.3d 1330, 1354-55 (11th Cir. 2006) (citing Morgan v. Illinois, 504 U.S. 719, 728-29 (1992)) (emphasis added). Moreover, "'[t]he State may challenge for cause prospective jurors whose opposition to the death penalty is so strong that it would prevent them from impartially determining a capital defendant's guilt or innocence.'" Morgan, 504 U.S. at 733 (quoting Lockhart v. McCree, 476 U.S. 162, 170 n.7 (1986)).

The Alabama Court of Criminal Appeals classified Madison's attempt to question juror P.H. about his views on the death penalty during wartime as an attempt to rehabilitate the juror, since an absolute refusal by P.H. to apply the death penalty would necessitate that juror's removal for cause. (See Tab R-49; Madison, 718 So. 2d at 101). See also Brown, 441 F.3d at 1354-55. However, the Court of Criminal Appeals further determined that even an affirmative answer to Madison's line of questioning would not have sufficiently rehabilitated the juror to prevent removal for cause. Id. Even if further questioning had revealed that juror P.H. was willing to apply the death penalty during war time, the fact is that P.H. had already demonstrated an unwillingness to apply it in any non-wartime setting, such as the present case. This was a reasonable indicator that P.H.'s views would have prevented, or at the very least substantially impaired, the performance of his duties as a juror in accordance with his instructions and his oath. As such, the prosecution had good reason to challenge the juror for cause and did so; the trial court granted the challenge and removed the juror from the venire. (See Tab R-6 at R-71 – 73).

Thus, Madison's contention that his constitutional rights were violated by the trial court's denial of full voir dire, as alleged in Claim 31, is without merit and is **DENIED**.

With regard to Claim 32, Madison contends that "[t]he trial court erred in admitting" a "replica of the badge Officer Schulte allegedly wore the night he was killed." (Doc. 1-2, ¶ III.R; Doc. 30, ¶ C.2.). Madison raised this claim in his direct appeal to the Alabama Court of Criminal Appeals, and the court denied the claim on its merits. (See Tab R-49; Madison, 718 So. 2d at 103). Madison then raised this claim in his petition for certiorari review of his direct appeal to Alabama's Supreme Court. (See Tab R-34 ¶ 2; Tab R-50, *Ex parte* Madison, 718 So. 2d at 105). The Alabama Supreme Court affirmed the Alabama Court of Criminal Appeals'

disposition of this claim without specifically addressing it.  (Tab R-50, *Ex parte* Madison, 718 So. 2d at 106).

In addressing Madison's claim regarding the fact that the trial court admitted "a replica of the badge Officer Schulte allegedly wore the night he was killed," the Alabama Court of Criminal Appeals[25] stated:

> The appellant contends that the trial court erred in admitting into evidence a police lapel badge that was, he says, false and artificial evidence. He argues that, in Carson v. Polley, 689 F.2d 562 (5th Cir. 1982), the admission of a replica knife was condemned as prejudicial because it was the subject of a factual dispute as to whether it was actually possessed by a man who had been subjected to police force. The appellant argues that the present case is similar, in that the central issue was a factual dispute as to whether he knew Julius Schulte was a police officer because Schulte was wearing a police badge.
>
> However, the appellate court's objection to the evidence introduced in Carson was that it was not made clear to the jury that the replica knife had no connection with the knife allegedly in Carson's possession when he was arrested. The appellate court noted that trial courts have great discretion in this area and conceded that the replica knife could ordinarily have been admitted as illustrative or demonstrative evidence. However, the court stated that the admission of the knife was error under the facts of Carson because a deputy policy chief was allowed to testify to the chain of custody and refer to the replica as "the" knife when he was unable to positively identify the weapon. No such error exists in the appellant's case.
>
> In Liberty National Life Ins. Co. v. Weldon, . . . 100 So.2d 696 (1957), the Alabama Supreme Court stated that articles or objects that relate to or explain the issues are admissible in evidence when duly identified and shown to be in substantially the same condition as at the time of the occurrence. Here, Officer John Wynne clearly testified that the police badge introduced into evidence was "not Cpl. Schulte's badge," although he stated that it was similar to the one that Schulte would have been wearing at the time of the

---

[25]  Supra note 7.

> killing. Based on Wynne's testimony, the trial court did not err in
> admitting the lapel badge into evidence.

(Tab R-49; <u>Madison</u>, 718 So. 2d at 103).

Presumably, Madison relies on § 2254(d)(1) in presenting this habeas claim, as he cites

<u>Carson v. Polley</u>, 689 F.2d 562 (5th Cir. 1982), in support of his argument that the trial court

erred in admitting the replica badge into evidence. However, the issue of whether the trial court

erred in admitting the replica badge into evidence involves the interpretation and application of

state law by the state courts. In reviewing an evidentiary determination of a state trial court, the

federal court will "not sit as a 'super' state supreme court." <u>Shaw v. Boney</u>, 695 F.2d 528, 530

(11th Cir. 1983) (citations omitted). In <u>Shaw</u>, the Eleventh Circuit explained:

> Unlike a state appellate court, we are not free to grant the
> petitioner relief simply because we believe the trial judge has
> erred. The scope of our review is severely restricted. Indeed, the
> general rule is that a federal court will not review a trial court's
> actions with respect to the admission of evidence. A state
> evidentiary violation in and of itself does not support habeas
> corpus relief. Before such relief may be granted, the violation must
> rise to the level of a denial of "fundamental fairness."
>
> In the context of state evidentiary rulings, the established standard
> of fundamental fairness is that habeas relief will be granted only if
> the state trial error was "material in the sense of a crucial, critical,
> highly significant factor." Moreover, application of this standard
> has been notably one-sided, consistent with the reluctance of
> federal courts to second-guess state evidentiary rulings. This court
> has established a well-documented resistance to granting relief
> when a habeas petition alleges a federal claim based merely on a
> state evidentiary ruling.

<u>Id.</u> (internal citations omitted).

Thus, Claim 32 will be reviewed only to determine whether the alleged error "render[ed]

the entire trial fundamentally unfair." <u>Carrizales</u>, 699 F.2d at 1055.

As the Alabama Court of Criminal Appeals found, Officer John Wynne clearly testified that the police badge introduced into evidence was not Officer Schulte's actual badge but was similar to the one that he would have been wearing at the time that he was killed.  (Tr. Transcript, Vol. 3, pp. R-317-318).  Wynne also testified that he saw a badge displayed on Officer Schulte's jacket when he arrived at the scene of the shooting.  (Id. at pp. R-316, 338).  Kimberly Hughes testified that she saw a badge on Officer Schulte's jacket, which was on the seat of his car, shortly before he was killed.  (Id. at pp. R-288-289, 292-293).  Carl Freeman, who was responsible for photographing the crime scene, also identified Officer Schulte's badge on his jacket.  (Id. at p. R-362-363).

In addition, other evidence was introduced that would have allowed a reasonable jury to determine that Madison knew that Officer Schulte was a police officer when he killed him.  Hughes and Wynne both testified about the police equipment visible in Officer Schulte's vehicle.  (Id. at pp. R-292, 315).  Several witnesses also testified to statements made by Madison, both before and after the shooting, that indicated he was aware that Officer Schulte was a police officer when he shot him.  (Id. at pp. R-228 ("[Madison] was saying I don't understand why the police are here or why I'm in trouble . . ."), 270 ("[Madison] – he came in – when we came in, me and Buffy, and we were in the – in the kitchen and he said – he wanted to know why the cops were out there . . ."),  271-272 ("[Madison] just kept screaming, I can't believe you called the cops.  Why did you call the cops."), 377 ("Well, [Madison] just said, I just shot a cop."), 381 ("[Madison] told her, he said, Ollie, I need you tonight more than ever.  He said, I need you to get me out of town.  He said, I've killed a policeman.")).  Therefore, even assuming that it was error for the trial court to admit the replica badge into evidence, the record simply does not

support a finding that the admission of that evidence prejudiced the outcome of Madison's trial and deprived him of fundamental fairness.

The facts of this case do not compare with those presented in Carson v. Polley, in which the Fifth Circuit held that the trial court erred by admitting a replica knife into evidence. 689 F.2d at 579. As the Alabama Court of Criminal Appeals explained, in Carson a "deputy policy chief was allowed to testify to the chain of custody and refer to the replica as 'the' knife when he was unable to positively identify the weapon." Madison, 718 So. 2d at 103. As the Fifth Circuit explained:

> what is crucial in the [Carson] case is the fact that the record shows that ultimately it was not made clear to the jury that the knife was admitted solely for illustrative purposes. After admission only as a 'similar' knife, [the witness] reiterated that it was 'the knife' which had been in police custody. This testimony occurred in connection with the admission of the envelope in which the knife was alleged to have been kept. It gave far more strength to the knife as an exhibit than was proper under limited admission.

Carson, 669 F.2d at 579.

In the instant case, by contrast, it is undisputed that the jury in Madison's case had been "informed that [the badge introduced] was not [Officer Schulte's] actual badge." (Doc. 30, ¶ C.2).[26]

---

[26] The remaining cases Madison cites in support of his argument are inapposite as none address, or even involve, the constitutionality of "replica" or "similar" evidence. See Johnson v. Mississippi, 486 U.S. 578, 584-86 (1988) (holding that mere evidence of an invalid conviction is irrelevant and inadmissible for the purposes of capital sentencing); Zant v. Stephens, 462 U.S. 862, 887-88 (1983) (holding that erroneous instruction did not "implicate our repeated recognition that the qualitative difference between death and    other penalties calls for a greater degree of reliability when the death sentence is imposed." (internal quotations omitted)); Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (noting only that "the penalty of death is qualitatively different from a sentence of life imprisonment").

Having reviewed the record in this case, the Court is satisfied that, even assuming error by the trial court in admitting the replica badge into evidence, that purported error was not "material in the sense of a crucial, critical, highly significant factor" in the trial, and it did not "render the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055. Thus, Claim 32 fails to state a cognizable federal habeas claim and is **DENIED.**

Having reviewed the record in this, the Court agrees with the Alabama Court of Criminal Appeals and the Alabama Supreme Court, with respect to Claims 1 and 25-32, that Madison failed to establish that his constitutional rights were violated. Madison has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals or the Alabama Supreme Court applied a rule that contradicts the governing law set forth in United States Supreme Court case law or that the courts decided the case differently than the United States Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Likewise, Madison has failed to establish under the "unreasonable application" clause that the Alabama Court of Criminal Appeals or the Alabama Supreme Court, though recognizing the correct governing principles from the United States Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Thus, Madison has not established that he is entitled to relief under § 2254(d)(1).

In addition, Madison has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decisions of the Alabama Court of Criminal Appeals or the Alabama Supreme Court were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court must presume as correct the determinations of all factual issues made by the state courts. 28 U.S.C. § 2254(e).

Accordingly, Claims 1 and 25-32 in Madison's petition for habeas relief are without

merit and are **DENIED**.

## III. Conclusion

For the reasons set forth herein, the requests for habeas corpus relief in Madison's § 2254 petition (Docs. 1-2 & 30) are **DENIED**. Specifically, Claims 2-24 and 33-34 are **DENIED** because they are procedurally defaulted, and Claims 1 and 25-32 are **DENIED** because the undersigned finds that Madison's constitutional rights were not violated.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts mandates that this court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant . . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts.

In turn, § 2253(c)(2) of Title 28 provides that "a certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Section 2253 codified[27] a standard previously announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983):

> The following quotation cogently sums up this standard: "In requiring a 'question of some substance,' or a 'substantial showing of the denial of [a] federal right,' obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are *debatable among jurists of reason*; that *a court could resolve the issues [in a different manner]*; or that the questions are '*adequate to deserve encouragement to proceed further.*'"

---

[27] As the Supreme Court noted in <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000), "[e]xcept for substituting the word 'constitutional' for the word 'federal,' the present § 2253 is a codification of the CPC standard announced in <u>Barefoot v. Estelle</u>." 529 U.S. at 474-75.

Id. (citations omitted) (emphasis added).   And "[i]n a capital case, the nature of the penalty is a proper consideration" in determining whether to issue a certificate of appealability.  Id. at 893.

Where a district court has rejected a claim on the merits, the petitioner seeking a certificate of appealability must establish that "reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong."  Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001) (citing Slack, 529 U.S. at 484).  However,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  .  .  .  Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.

Slack, 529 U.S. at 484; Lamarca v. Sec'y, Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009).

A certificate of appealability does not, however, require a showing that the appeal will succeed.  Miller-El, 537 U.S. at 337.  The Court "should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief."  Id.

After reviewing the issues raised in Madison's § 2254 petition, the Court finds that Madison has failed to make a substantial showing of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its rulings as to each and all of the remaining issues in his habeas petition.  Therefore, a certificate of appealability is hereby **DENIED** as to those issues.

**DONE** and **ORDERED** this the **21**st day of **March, 2011.**

s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**
