IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VERNON MADISON,      ) | |
|     Petitioner,      ) | |
| ) | |
| v.      ) | CIVIL ACTION NO.: 09-00009-KD-B |
| ) | |
| RICHARD ALLEN, *et al.*,      ) | |
|     Respondents.      ) | |

**ORDER**

This matter came before the Court on April 22, 2013 for a <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) evidentiary hearing prompted by the mandate of the United States Court of Appeals for the Eleventh Circuit, wherein this Court's order denying Petitioner's federal habeas petition was affirmed in part, reversed in part, and remanded, with instructions for this Court "to complete the final two steps of the <u>Batson</u> proceedings." (Doc. 55 at 12; Doc. 56 at 14).[1]

**I.     Background**

In May 1985, Petitioner Vernon Madison ("Madison'), who is black, was indicted by a Mobile County grand jury for capital murder, for killing Julius Schulte, a white police officer of the Mobile, Alabama Police Department.[2]  On September 12, 1985, a jury found Madison guilty

---

[1] In this case, the Eleventh Circuit concluded that step one of the <u>Batson</u> analysis, the prima facie case, has been met.  Therefore, the parties were previously ordered to brief steps two and three of the <u>Batson</u> analysis in the pre-hearing submissions.  See <u>Madison v. Commissioner, Ala. Dept. of Corrections</u>, 677 F.3d 1333, 1337 (11th Cir. Apr. 27, 2012) ("[s]econd, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination.") (quoting <u>Johnson v. California</u>, 545 U.S. 162, 168 (2005)).

[2] In its opinion affirming Madison's capital murder conviction and death sentence, the Alabama Supreme Court summarized the underlying facts of this case as follows:

(Continued)

of capital murder; he was convicted and sentenced to death. Madison appealed and the Court of Criminal Appeals reversed his conviction and remanded for a new trial because the dictates of Batson had been violated. Madison v. State, 545 So.2d 94 (Ala. Crim. App. 1987) (Madison I) (finding that the prosecutor's explanations for the use of peremptory strikes to remove all seven (7) black prospective jurors from venire were "superficial, show[ed] a lack of proper examination" and did not overcome the defendant's prima facie case). Following his second trial in September of 1990, Madison was again convicted and sentenced to death. Madison appealed, and the Court of Criminal Appeals reversed his conviction and remanded for a new trial, on the grounds that the state had elicited expert testimony based partly on facts not in evidence. Madison v. State, 620 So.2d 62 (Ala. Crim. App. 1992) (Madison II) (reversing because the prosecution's psychologist Dr. McClaren was permitted, during the guilt phase of trial, to state his opinion of the appellant's mental condition at the time the offense was committed, despite the fact that McClaren's opinion was based in part on information not in evidence).

---

> The evidence presented at Madison's third trial showed that on April 18, 1985, Cpl. Julius Shulte, an officer of the Mobile Police Department, was dispatched to Cheryl Green's home to investigate a report that Green's 11-year-old daughter was missing. Corporal Shulte was not in his police uniform and was not in a marked car. He was, however, wearing a Mobile Police Department badge. Madison, who until a few days earlier had been living with Green, came to Green's home, before Cpl. Shulte arrived, to retrieve personal items that Green had thrown out of the house. By the time Cpl. Shulte arrived at Green's home, Green's daughter had already returned. Nonetheless, neighbors asked Cpl. Shulte to stay until Madison had left Green and her child safely alone.
>
> Green and Madison came out of the house and talked to Cpl. Shulte, who never got out of his car. After a brief conversation with Cpl. Shulte, Madison appeared to leave. Actually, he walked about a block away and returned with a .32 caliber pistol; he covertly walked up behind Cpl. Shulte, while Cpl. Shulte was still in his car. Madison fired two shots at near point-blank range, one into the back of Cpl. Shulte's head and one into his left temple. Madison then shot Green twice in the back and fled the murder scene. He subsequently told an acquaintance, "I just killed a cop."

Ex parte Madison, 718 So.2d 104, 105 (Ala. 1998).

At his third trial in April 1994, the jury found Madison guilty of capital murder and recommended during the penalty phase, by an 8-4 vote, that he be sentenced to life imprisonment without parole. However at the July 7, 1994 sentencing hearing, the trial judge overrode the jury's recommendation and sentenced Madison to death. Madison appealed and on January 17, 1997, the Court of Criminal Appeals affirmed his conviction and death sentence, Madison v. State, 718 So.2d 90 (Ala. Crim. App. 1997) (Madison III), and on June 19, 1998, the Alabama Supreme Court affirmed, Ex parte Madison, 718 So.2d 104 (Ala. 1998). Madison then petitioned the United States Supreme Court for a writ of certiorari, which was denied on November 16, 1998. Madison v. Alabama, 525 U.S. 1006 (1998). On June 18, 1999, Madison initiated a collateral attack on his conviction and death sentence by filing a Rule 32 petition for post–conviction relief, which was dismissed by the trial court and affirmed by the Court of Criminal Appeals. Madison v. State, 999 So.2d 561 (Ala. Crim. App. 2006). On December 1, 2006, the Court of Criminal Appeals denied Madison's request for a rehearing and finally, Madison sought certiorari review in the Alabama Supreme Court, which was denied on August 15, 2008.

In January of 2009 and 2010, Vernon Madison filed a petition (and amended petition) in this Court for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docs. 1, 30). In so doing, Madison challenged his 1994 conviction and death sentence for capital murder. Among the numerous grounds asserted in his habeas petition, Madison argued that "[t]he defense established a prima facie case under Batson v. Kentucky," and therefore, "[t]he trial court erred by not requiring the [S]tate to articulate its reasons for striking black jurors from Mr. Madison's jury." (Doc. 1 at 41-43). At the 1994 trial, the prosecution used six (6) of its 18 peremptory strikes to

strike potential black jurors.[3]  The makeup of the jury was seven (7) blacks and seven (7) whites. It was noted by the prosecution that the percentage of blacks on the jury was substantially larger than the corresponding percentages in the jury pool (75% white and 25% black).  Because of these facts, the state courts concluded that Madison had not even established a prima facie case of racial discrimination.

On March 21, 2011, this Court dismissed Madison's habeas petition, holding that he failed to establish that the state courts' determination of his claims: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[;]" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d). Madison v. Allen, 2011 WL 1004885, *42 (S.D. Ala. Mar. 21, 2011).  (See also Docs. 41, 42).  With regard to Madison's Batson, claim, this Court concluded that based on its review of the record of the state court proceedings, he "did not establish a *prima facie* case of discrimination under Batson, and therefore the prosecution was not required to articulate reasons for challenging black jurors." (Doc. 41 at 60).

Madison filed a motion for reconsideration, which this Court denied on April 25, 2011. (Docs. 43, 45).  On May 20, 2011, Madison filed a Notice of Appeal and appealed this Court's denial of his Section 2254 petition. (Doc. 46).  The Eleventh Circuit granted Madison a Certificate of Appealability (Doc. 53) as to: 1) whether the trial judge and Alabama Court of Criminal Appeals violated Batson and the Fourteenth Amendment by erroneously concluding that counsel had not established a prima facie case of discrimination in the prosecution's use of

---

[3] The defense struck 18 white jurors.

peremptory strikes; 2) whether the trial judge and the Court of Criminal Appeals violated the Eighth and Fourteenth Amendments by failing to consider and find mitigating evidence when imposing and affirming Madison's death sentence; and 3) whether the authority of a trial judge to judicially "override" a jury sentencing recommendation results in a sentence based on arbitrary procedures, in violation of the Eighth and Fourteenth Amendments.

On April 27, 2012, the Eleventh Circuit entered an opinion remanding this case for a Batson hearing.  Madison v. Commissioner, Ala. Dept. of Corrections, 677 F.3d 1333 (11th Cir. 2012).  (See also Docs. 55, 56).  In reversing this Court's determination as to Madison's Batson claim, the Eleventh Circuit held that the state court's decision was not entitled to *AEDPA* deference. The Court of Appeals ruled that the state court "used the wrong standard for establishing a prima facie case" because, under the panel's reading, the state court had "requir[ed] Madison to 'establish purposeful racial discrimination,'" the standard that applies at the third step of the Batson analysis, not the prima facie stage.  Madison, 677 F.3d at 1339. Concluding that the state court had "reached a decision contrary to clearly established federal law," the Eleventh Circuit announced that it would review the Batson issue *de novo*.  Id. at 1338-1339.  The appellate court then held that in its independent judgment, Madison had established a prima facie case of discrimination.  Id. at 1339.  The Eleventh Circuit accordingly reversed this Court's order and "remand[ed] the case for the district court to complete the final two steps of the *Batson* proceedings. *See Ochoa–Vasquez,* 428 F.3d at 1046 n. 40 (stating that if the *Batson* objector's 'evidence establishes a prima facie case, then we would need to remand to the district court for further *Batson* proceedings, including a statement of the reasons by the government for ...its peremptory strikes.'); *see also Paulino v. Castro,* 371 F.3d 1083, 1092 (9th Cir. 2004) (same)."  Id.  Respondents filed a timely petition for a panel rehearing or rehearing en banc; the

Eleventh Circuit denied this petition on June 21, 2012. The Eleventh Circuit then issued its mandate on July 5, 2012. (Doc. 56).

On July 17, 2012, in light of the Eleventh Circuit's reversal and remand, this Court set a briefing schedule regarding Madison's Batson claim and scheduled an evidentiary hearing on same for September 2012. (Doc. 57). After several continuances and additional briefing – which included the Respondents' appeal to the United States Supreme Court for which a writ of certiorari was denied-- the matter is now ripe for review.

## II.  Discussion

At the outset, the Court is aware of the evidentiary limitations placed upon federal courts assessing a habeas claim under 28 U.S.C. § 2254(d), as set forth by the Supreme Court in Cullen v. Pinholster, 131 S.Ct. 1388 (2011). However, because the Eleventh Circuit has previously completed the § 2254(d) review in this case and has determined that the state court decision violated the standards of § 2254(d)(1), see Madison, 677 F.3d at 1338-1339, the Court finds that Pinholster is no longer applicable.[4] At this stage of the proceedings, the Court will conduct a *de novo* review of Madison's Batson claim, unconstrained by Pinholster.[5]

---

[4] The Court assumes that the Eleventh Circuit considered Pinholster inapplicable to these remand proceedings given that it did not mention Pinholster in its decision and, instead, referred this Court to United States v. Ochoa-Vasquez, 428 F.3d 1015, 1045 (11th Cir. 2005), and Paulino v. Castro, 371 F.3d 1083, 1092 (9th Cir. 2004) ("Paulino I"), both of which support the consideration of new evidence by the district court on remand when resolving a Batson issue. See Madison 677 F.3d at 1339 ("if the Batson objector's 'evidence establishes a prima facie case, then we would need to remand to the district court for further Batson proceedings, including a statement of the reasons by the government for … its peremptory strikes.'") (quoting Ochoa, 428 F.3d at 1046 n.40) and (citing Paulino I, 371 F.3d at 1092, in which the Ninth Circuit ordered the district court on remand to "hold a hearing so the state will have an opportunity to present evidence as to the prosecutor's race-neutral reasons for the apparently-biased pattern of peremptories, and determine whether the prosecutor violated Batson."). In Paulino II, the Ninth Circuit described the hearing that took place on remand as a Batson "reconstruction" hearing, that is, "an evidentiary hearing that takes place some time after the trial, where the prosecutor testifies to her actual reasons for striking the venire-members in question, or the State presents circumstantial evidence of those reasons...." Paulino v. Harrison, 542 F.3d 692, 700 (9th Cir. 2008) ("Paulino II"). This Court interprets
(Continued)

Batson holds that a party may not exercise a peremptory challenge against a juror solely on account of that juror's race. District courts apply a three (3) step procedure in ruling on a Batson objection. See, e.g., United States v. Allen-Brown, 243 F.3d 1293, 1296-1297 (11th Cir. 2001). First, the objector must make a prima facie showing that the peremptory challenges were exercised on the basis of race. Id. Factors to consider include whether: 1) there has been a pattern of strikes against minority jurors; 2) the striking party's questions or statements suggest a discriminatory purpose; 3) the racial composition of the remaining jurors; 4) the race of the defendant; and 5) the nature of the crime. Id. at 1297-1298. Second, if the court finds that the objector has made a prima facie showing of discrimination, the burden shifts to the striking party to give a race-neutral reason for its strikes. Id. at 1297. Third, if the striking party is able to offer such reasons, the court must determine whether the objecting party has carried its burden of

---

the Eleventh Circuit's incorporation of Ochoa and Paulino I in its remand instructions as an indication of its intention for this Court to conduct a Batson evidentiary hearing and to develop Madison's Batson claim by considering evidence of the prosecutor's race-neutral reasons for striking the venire members in question, even if that evidence was not previously presented to the state courts.

[5] See e.g., Skipwith v. McNeil, 2011 WL 1598829, *5 (S.D. Fla. Apr. 28, 2011) ("*[n]ow that the section 2254(d) hurdle has been cleared*, the Court agrees with Judge White's reasons for holding an evidentiary hearing and considers Skipwith's ineffective assistance of counsel claim on its merits.") (emphasis added); Werber v. Milligan, 2012 WL 1458098, *8 (N.D. Ohio April 26, 2012) (recognizing that Pinholster "*allow*[s]...an evidentiary hearing after a reviewing court determines that a petitioner's claim satisfies § 2254(d).") (emphasis in original); Watson v. Cate, 2011 WL 6202788, *54 (S.D. Cal. Dec. 6, 2011) ("If Petitioner can satisfy the provisions of § 2254(d) by showing that, based on the state court record, the state court adjudication of his claim involved an objectively unreasonable application of Strickland, then Pinholster arguably would not preclude further development of the record in order to determine whether Petitioner *actually* received constitutionally ineffective assistance of counsel.") (emphasis in original); Hearn v. Ryan, 2011 WL 1526912, *2 (D. Ariz. April 21, 2011) ("[T]his Court made a final decision concerning the unreasonableness of the state court's decision, based on the state court record, and that decision is not dependent on the outcome of the evidentiary hearing. Having determined Petitioner's Faretta claim satisfied § 2254(d)(1), it fell to this Court to resolve the claim ... Pinholster does not prevent this Court from considering evidence of express consent presented at the evidentiary hearing."); Pao Lo v. Kane, 2011 WL 2462932, *32 (E.D. Cal. June 17, 2011) (holding that, because the state court's decision failed to meet the criteria of § 2254(d)(1), "Pinholster [was] inapplicable," and the "reviewing court must conduct a de novo review of the applicable habeas claim.").

proving purposeful discrimination. Id. "The objecting party may carry its burden by showing that the striking party's race-neutral reason is a mere pretext for discrimination." United States v. Bernal–Benitez, 594 F.3d 1303, 1312 (11th Cir. 2010).

With this in mind, the Court turns to the Eleventh Circuit's charge: to complete the final two (2) steps of the Batson proceedings in light of its ruling that the prosecutor's removal of qualified black venire members at Madison's trial established a prima facie case of discrimination. See, e.g., Johnson v. California, 545 U.S. 162 (2005). Specifically, the strikes at issue encompass six (6) black venire members **Geraldine Adams, Willie Brown, Thomas Dawson, Charles Hall, James McQueen** and **Shirley Smith.**[6]

### A.   Step Two: Race Neutral Reasons for the Strikes

At this second step, the striking party must articulate a race neutral reason for the strike. To satisfy this burden, the striking party need only proffer a "clear and reasonably specific" explanation of the "legitimate reasons" why it exercised the peremptory challenges in that manner. See, e.g., McGahee v. Alabama Dept. of Corr., 560 F.3d 1252, 1257 (11th Cir. 2009); Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987). "[T]he following are illustrative of the types of evidence that can be used to overcome the presumption of discrimination and show neutrality: 1) [t]he state challenged non-black jurors with the same or similar characteristics as the black jurors who were struck[;] [and] 2) [t]here is no evidence of a pattern of strikes used to challenge black jurors…" Branch, 526 So.2d at 623. The burden at this second step is exceedingly low. See, e.g., Purkett v. Elem, 514 U.S. 765, 767-768 (1995). The issue is the facial validity of the prosecutor's explanation; unless a discriminatory intent is inherent in the prosecutor's

---

[6] From a panel of 60 jurors. R-26.

explanation, the reason offered will be deemed race neutral. United States v. Walker, 490 F.3d 1282, 1293 (11th Cir. 2007) (providing that "almost any plausible reason can satisfy the striking party's burden" whether that be "superstitious, silly, or trivial" or even mistaken, so long as it is race neutral). The striking party, however, must proffer more than mere general explanations and an affirmation of its good faith. McGahee, 560 F.3d at 1257. The court must then confront the "decisive question" and evaluate the credibility of the prosecution's explanation "in light of all the evidence with a bearing on it." Parker v. Allen, 565 F.3d 1258, 1270 (11th Cir. 2009) (citing Hernandez v. New York, 500 U.S. 352, 365 (1991) and Miller–El v. Dretke, 545 U.S. 231, 252 (2005)).

At the trial, the prosecution struck six (6) black venire members. Respondents assert that that the reasons for exercising its strikes were valid, race neutral reasons including: 1) occupation-based (Adams and Smith); 2) knowledge of, or association with, defense witnesses or Madison himself (Dawson, Hall and McQueen); and 3) based on a juror's apprehension about the death penalty or the case (Brown).

To support those strikes, the respondent offered the attorney's handwritten trial notes taken during the voir dire process as well as notes made in preparation for the state court Batson hearing, pursuant to Rule 803(5) of the Federal Rules of Evidence. These notes indicate as follows:

-Geraldine Adams: struck because she was married to a mental health worker and mental health was expected to be an issue during Madison's trial.

-Willie Brown: struck because of his stated belief that in a death penalty prosecution case the standard should be proof beyond all doubt.

-Thomas Dawson: struck because he knew defense witness Cozy Brown from the restaurant/seafood market Brown owned.

-<u>Charles Hall</u>: struck because of his knowledge/association with Cozy Brown and three (3) other witnesses, a "couple" of which were defense witnesses.

-<u>James McQueen</u>: struck because he grew up with Madison, "played with him, went to his house" and stated that he would rather not be a juror. He also knew defense witnesses Cozy Brown and McCord. It was also noted that he had a marijuana conviction and that he had previously sat on a jury where they found the defendant innocent of robbery.

-<u>Shirley Smith</u>: struck because of her occupation as a therapist at MARC as Madison's mental health was expected to be an issue at trial.

At the <u>Batson</u> hearing, the respondent also offered the testimony of John Cherry, the prosecutor in the third trial of this case. Mr. Cherry identified his handwritten notes as having been prepared contemporaneously with the selection of the jurors, but admitted that he had very little independent recollection as to the reasons for the strikes. However, Mr. Cherry also emphatically denied that he would have struck jurors based on their race. Mr. Cherry explained that he would routinely strike jurors that knew defense witnesses. And in this case, because the mental health of the defendant was potentially an issue, he would have struck jurors who may have some relation to the mental health field or particularly that knew Dr. Amyx, a defense witness. Mr. Cherry also noted that his nine (9) years of experience as a defense attorney, *i.e.*, knowing what type of juror that was favorable for the defense, would have added to his decision to strike the jurors he chose. He also noted that his knowledge of the previous problems that his office had encountered with reversals due to <u>Batson</u> issues made him conscious of his decisions and prompted the recording of his reasons in his notes.

Mr. Cherry is currently the Chief of the criminal division for the U.S. Attorney's Office in the Southern District of Alabama. As such, the undersigned has had the opportunity to not only judge his credibility in this proceeding, but has had over 13 years to judge the veracity and

credibility of John Cherry.[7]  It is the opinion of this court, after considering the written notes and testimony of John Cherry, that the prosecutor's explanations for striking the jurors are credible, valid and race-neutral.

### B.   Step Three: Purposeful Discrimination & Proffered Race Neutral Reasons

At this third step, the objecting party must prove purposeful discrimination by showing that the proffered neutral reason is a pretext for discrimination.  This step demands consideration of the totality of the circumstances and trial courts are afforded great deference in this purely factual inquiry.  See, e.g., Snyder v. Louisiana, 552 U.S. 472, 477 (2008) (noting that "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor[]"); Walker, 490 F.3d at 1294 (stating that the "trial judge is in the best position to evaluate an attorney's candor and ferret out purposeful discrimination[]" such that the appellate court will defer to the trial court's findings on genuineness of reasons even when "troubled by the weakness of the record evidence[]"); Bryant v. State, 951 So.2d 732, 740 (Ala. Crim. App. 2003) (finding that a trial court's Batson ruling is entitled to great deference and will not be reversed unless clearly erroneous).  "The reasons stated by the prosecutor provide the only reasons on which the prosecutor's credibility is to be judged[]" and "[t]he credibility of the prosecution's explanation is to be evaluated considering the 'totality of the relevant facts,' including whether members of a race were disproportionately excluded." Parker, 565 F.3d at 1271 (citing Hernandez, 500 U.S. at 363).  See also e.g., United States v. Houston, 456 F.3d 1328, 1335 (11th Cir. 2006)).  Additionally, Alabama courts have

---

[7] Even without the additional 13 years, the Court's credibility determination would be the same.

held that if the striking party proffers multiple neutral explanations, the objecting party must prove all of those reasons to be pretextual. Johnson v. State, 648 So.2d 629, 632 (Ala. Crim. App. 1994).

Circumstances that may support a finding of pretext are varied. See, e.g., Ex parte Branch, 526 So.2d at 624; Parker, 565 F.3d at 1271. Questions arise regarding the credibility of the explanation and the possibility that the explanation is pretextual: 1) when the prosecutor's explanation for a strike is equally applicable to jurors of a different race who have not been stricken; 2) upon a comparative analysis of the jurors struck and those who remained including the attributes of the white and black venire members; or 3) when the prosecution fails to engage in a meaningful voir dire examination regarding a subject that it alleges it is concerned.[8] Parker, 565 F.3d at 1271. The following examples illustrate the types of evidence that can be used to show sham or pretext: 1) The reasons given are not related to the facts of the case; 2) there was a lack of questioning to the challenged juror, or a lack of meaningful questions; 3) disparate treatment-persons with the same or similar characteristics as the challenged juror were not struck; 4) disparate examination of members of the venire; 5) the prosecutor, having 6 peremptory challenges, used 2 to remove the only 2 blacks remaining on the venire; 6) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically. Branch, 526 So.2d 623-624.

The prosecutor's failure to strike similarly situated jurors is not pretextual "where there are relevant differences between the struck jurors and the comparator jurors." United States v.

---

[8] See also e.g., Miller–El, 545 U.S. at 241. However, the uneven application of a facially race-neutral explanation does not, by itself, necessarily establish the invalidity of the explanation. See, e.g., Novaton, 271 F.3d at 1004.

Novaton, 271 F.3d 968, 1004 (11th Cir. 2001).  The prosecutor's explanation "does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices."  Rice v. Collins, 546 U.S. 333, 338 (2006).  "Neither a prosecutor's mistaken belief about a juror nor failure to ask a voir dire question provides 'clear and convincing' evidence of pretext."  Parker, 565 F.3d at 1271 (citing McNair v. Campbell, 416 F.3d 1291, 1311-1312 (11th Cir. 2005)).

> 1. **Employment/Occupation Based Strikes**

Madison asserts that the occupation-based strikes lack merit as the venire members were never asked to reveal where they worked and the record does not reveal the venire members' responses to questions about their spouses' occupations, and the prosecutor never asked any of the jurors about their occupations/spouses' occupations or whether they were biased.  However, the evidence shows that the prosecution had the jurors' completed questionnaires (see respondent's Exhibit #1) which indicated their employment and that the judge questioned the jurors regarding their spouses' employment.  The notes of Mr. Cherry further support that the spouses' occupations were known.  And to support the accuracy of the prosecutor's notes, the respondent called venire member, Geraldine Adams.   Ms. Adams testified that in April 1994, her spouse was a mental health worker at Searcy.

Strikes based on employment/occupation have generally been upheld as a valid race neutral reason for striking prospective jurors.  See, e.g., J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 142 n. 14 (1994) (suggesting that peremptory challenges based on a status or occupation do not raise the same level of concern as those based on race or gender); Mullins v. Bennett, 228 Fed. Appx. 55, 56 (2nd Cir. 2007) (same); United States v. Maxwell, 473 F.3d 868, 872-873 (8th Cir. 2007) (same); Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir. 2003) (same); United States v.

Thompson, 827 F.2d 1254, 1260 (9th Cir. 1987) (same).  See also e.g., Sanders v. State, 623 So.2d 428, 432 (Ala. Crim. App. 1993) (employment is race neutral).  See also Currin v. State, 535 So.2d 221 (Ala. Cr. App. 1988) (same); Burlington Northern R.R. Co. v. Whitt, 575 So.2d 1011, 1018 (Ala. 1990) (same as to both past and present occupation).  Additionally, strikes based on a spouse's employment have been found to be race neutral.  See, e.g., United States v. Biaggi, 853 F.2d 89, 96 (2nd Cir. 1998).

At the Batson hearing, Madison pointed out that there was a white juror, who was not struck by the state, who indicated that she knew Dr. Brown.  Dr. Brown was a psychiatrist who was listed as a witness for the state.  Madison argues that this comparator evinces that Mr. Cherry's reasons for striking Adams and Smith were pretext for racial discrimination.  The Court cannot agree.  Dr. Brown was a state witness.  The juror was not a mental health worker nor was she married to a mental health worker.

### 2.    Knew/Associated with Defendant or Defense Witness Strikes

Madison asserts that the "based on a potential juror's knowledge of, or association with, defense witnesses or the defendant" strikes lack merit as the prosecutors' failure to ask follow-up questions related to these purported reasons "renders them suspect."  For example, Madison notes that while the record reveals that Hall was "acquainted" with defense witness Cozy Brown, the prosecutor never ascertained the nature of that relationship.

The state points out that Mr. Cherry did not follow up with any juror with additional questions.

Striking a venire member because he knew the defendant or his family is a race-neutral reason for a strike.  See, e.g., Temmis v. State, 665 So.2d 953 (Ala. Crim. App. 1994).  Likewise, striking a venire member who knows a defense witness has been held to be race neutral.  See,

e.g., Williams v. State, 627 So.2d 994, 999 (Ala. Crim. App. 1992). This is true even if the relationship is insufficient to strike the potential juror for cause. See, e.g., United States v. Lewis, 593 F.3d 765, 770 (8th Cir. 2010) (finding as race neutral, a prosecutor's explanation that she struck two jurors because they personally knew a defense witness); United States v. Barker, 69 Fed. Appx. 208, 211 (6th Cir. 2003) (stating that "[w]hile simply knowing of a defendant may not be a particularly persuasive reason for striking a juror, we are mindful that the government's articulated reason need not be persuasive or even plausible so long as it is race-neutral[]"); United States v. Williamson, 53 F.3d 1500, 1509-1510 (10th Cir. 1995) (noting that proffered reasons for strike of black prospective juror, that juror knew defendant, that juror was acquainted with witness, and that juror was familiar with subject matter of trial, were facially race neutral for purposes of Batson violation).

The Court finds no evidence of pretext for racial discrimination in the fact that Mr. Cherry did not ask follow-up questions or in the fact that one (1) of the defense witnesses, Mr. Cozy Brown, was well known in the community.

### 3. **Death Penalty Apprehension Strike**

Madison has not addressed the "based on a juror's apprehension about the death penalty or case" strike of Mr. Brown, as asserted by the Respondents.

"[C]learly established federal law, as determined by holdings in Supreme Court decisions, does not prohibit prosecutors from using their peremptory strikes to remove venire members who are not ardent supporters of the death penalty...." Walls v. Buss, 658 F.3d 1274, 1282 (11th Cir. 2011) (citing Bowles v. Secretary for Dept. of Corrections, 608 F.3d 1313, 1317 (11th Cir. 2010)). It is constitutionally permissible for the prosecutor to retain jurors who are "death qualified" and to strike jurors who state that they could not impose the death penalty

under any circumstance, Lockhart v. McCree, 476 U.S. 162, 165-167 and 175-177 (1986). See, e.g., Parker, 565 F.3d at 1270. However, the fact that a prospective juror has expressed concern that the death penalty might result in the execution of innocent persons has been found to be pretext for race discrimination in violation of Batson. See, e.g., Love v. Yates, 586 F. Supp.2d 1155, 1174 (N.D. Cal. 2008).[9] Moreover, "[a]lthough a juror's reservations about the death penalty may not be sufficient for a challenge for cause, his view may constitute a reasonable explanation for the exercise of a peremptory strike." Johnson v. State, 620 So.2d 679, 696 (Ala. Crim. App. 1992), *rev'd on other grounds*, 620 So.2d 709 (Ala.1993), *on remand*, 620 So.2d 714 (Ala. Crim. App.), *cert. den.*, 510 U.S. 905 (1993).  The Court finds that Madison has failed to establish pretext for racial discrimination for this strike.

Madison also argues the following additional facts, *inter alia*, that the Court has considered: 1) this was an interracial crime involving a white police officer and a black defendant and the racial overtones involved increase the risk of racial bias when the death penalty is sought; 2) the history of racially discriminatory jury selection by the Mobile County District Attorney's office[10] and 3) there was a notation in the handwritten notes that a black

---

[9] See also Johnson v. Scott, 68 F.3d 470 (5th Cir. 1995):

….Batson does not apply in the context of a juror's attitude towards the death penalty. See Brown v. North *Carolina*, 479 U.S. 940, 941 (1986) ("Batson does not touch, indeed, it clearly reaffirms the ordinary rule that a prosecutor may exercise his peremptory strikes for any reason at all.") (O'Connor, J., concurring in denial of petition for certiorari) (citation omitted). "Permitting prosecutors to take into account concerns expressed about capital punishment by prospective jurors in exercising peremptory challenges simply does not implicate the concerns expressed in Witherspoon." *Id.; see also Gray v. Mississippi,* 481 U.S. 648, 667-68 (1987) (noting that such use of peremptory challenges is common).

[10] Although the past history of discrimination by an office may be relevant to the totality of the circumstances, the Court does not find that this fact in any way diminishes the credibility of John Cherry's explanations for his strikes.

female felt the death penalty was a deterrent, but similar notations were not recorded for the white jurors who responded the same. According to Madison, the significance of these facts, is that they evince a consciousness of race that permeated the selection.

Having considered the totality of the circumstances, the Court finds that Madison has failed to prove purposeful discrimination or pretext. Accordingly, it is **ORDERED** that Madison's petition is **DENIED.**

**DONE** and **ORDERED** this the **25th** day of **April 2013.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**